ROBERT LEMOYNE WATSON, JR. v. GAYLE POWELL WATSON

No. COA06-1640

(Filed 6 November 2007)

## 1. Contempt— civil contempt—no entitlement to full protections of criminal contempt

The trial court did not err in a civil contempt case by failing to give defendant due notice of whether the contempt proceeding against her was civil or criminal in nature, because: (1) defendant admitted she was adjudicated in civil contempt, and she was not entitled to the full procedural and evidentiary protections of a criminal contempt proceeding; (2) the Court of Appeals has already rejected the argument that a defendant should have been granted the full protections of a criminal contempt proceeding when the notice of hearing did not state whether the proceeding was criminal or civil; and (3) the contempt proceeding was

clearly civil in nature, no relief of a punitive nature was ordered, and defendant had adequate notice of the proceeding.

**2. Contempt— civil—scope of hearing—due notice**

The trial court did not err in a civil contempt case by holding that defendant had due notice that the scope of the hearing would encompass issues related to the Chase and MBNA credit cards, because: (1) plaintiff's verified motion and the trial court's order to show cause read together constituted adequate notice to defendant that her inaction pertaining to the credit cards was alleged as a basis for contempt; (2) defendant did not object to the presentation of evidence on this issue at the contempt hearing, and defendant presented evidence relating to the credit card debt including offering exhibits; and (3) defendant's active participation in the hearing on this issue, without objection, defeated her contention that she was without notice.

**3. Contempt— civil—equitable distribution—failure to pay credit cards**

The trial court did not err by holding defendant in contempt for failure to comply with the court order in an equitable distribution case as it related to credit cards even though defendant contends the consent order merely required her to assume financial responsibility for the credit card debts, because: (1) the findings of fact pertaining to the credit card accounts are supported by competent evidence and are thus binding on the Court of Appeals; (2) nearly one year after the execution of the consent order, defendant failed to do the three things required of her by the consent order, and her obligation was to transfer the accounts into her name individually instead of removing plaintiff's name from the accounts; (3) the court clearly and unambiguously articulated what action defendant was required to undertake relating to the credit cards in order to purge herself of contempt; (4) the trial court properly ordered defendant to pay the credit card debt as the only means of forcing defendant to comply with the terms of the consent order; and (5) contrary to defendant's assertion, there was competent evidence in the record to support the court's finding that the Chase card ending in -9036 was defendant's responsibility.

**4. Contempt— civil—present ability to pay**

The trial court did not err in a civil contempt case by finding that defendant had the present means and ability to satisfy the

credit card obligations, because: (1) the court found that defendant had in excess of $580,000 of equity in real estate in her name individually, and the court afforded defendant 90 days from the time of the contempt hearing on 5 June 2006 to comply with the order thus providing defendant an opportunity to sell the properties and acquire the funds to satisfy the order; and (2) prior findings of a present ability to pay may be res judicata as to future proceedings on that issue, and the court found that defendant had the ability to take reasonable measures to comply with the court order at the time of the 20 June 2006 contempt order.

**5. Contempt— civil—willful failure to execute joint tax returns**

The trial court did not err by holding defendant in civil contempt based on her failure to execute the parties' 2001 and 2002 joint tax returns, because: (1) defendant refused to sign 1040x forms for each tax year, and those forms were part of the process of filing the amended joint tax returns; (2) defendant's refusal to execute the forms was knowingly, deliberate, and part of a series of recalcitrant acts designed to frustrate the filing of amended joint tax returns required by the express terms of the consent order; and (3) although defendant contends the purpose of the consent order was no longer served by execution of these documents when the IRS had already disallowed the 2001 joint tax return and the deadline for filing the 2002 return passed five days prior to the contempt order, there was competent evidence that signing the forms would still accomplish the order's purpose since plaintiff's CPA testified that the signing would show the parties' due diligence when requesting an extension for the 2002 return from the IRS.

**6. Costs— attorney fees—expert witness fees—civil contempt**

Although the trial court's order in a civil contempt proceeding to enforce an equitable distribution consent order requiring defendant to pay attorney fees was proper, it was error for the court to assess an expert witness fee against defendant, and that portion of the order is reversed.

Appeal by defendant from judgment entered 20 June 2006 by Judge G. Wayne Abernathy in Alamance County District Court. Heard in the Court of Appeals 23 August 2007.

WATSON v. WATSON

[187 N.C. App. 55 (2007)]

*Vernon, Vernon, Wooten, Brown, Andrews & Garrett, P.A., by Benjamin D. Overby and Wiley P. Wooten, for plaintiff-appellee.*

*Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene and Adrienne E. Allison, for defendant-appellant.*

STEELMAN, Judge.

When defendant is held in civil contempt of court, the constitutional notice requirements applicable to criminal contempt proceedings are not implicated. When defendant is served with a copy of the motion for an order to show cause, which states the grounds for the alleged civil contempt, as well as the show cause order referencing the motion, there is adequate notice of the nature of the contempt proceedings. When the parties' consent order provided that defendant is to "assume financial responsibility" for credit card debt, and defendant has the present means and ability to comply, it is not error for the court to hold defendant in contempt of court for failing to comply with the consent order as it related to the credit card accounts, and to order defendant to pay off the debt as a condition of purging herself of contempt. When defendant refused to execute forms requested by the Internal Revenue Service in order to file amended tax returns, as required under the parties' consent order, it is not error for the court to order defendant to sign these forms. While it was appropriate for the court to order the payment of attorneys' fees in a contempt proceeding for failure to comply with an equitable distribution consent order, the court erred in assessing expert witness fees against defendant.

I. Factual Background

Robert Lemoyne Watson (plaintiff) filed suit against his wife, Gayle Powell Watson (defendant), in October 2003 seeking equitable distribution of the parties' marital property. The parties entered into a consent order, which was filed 17 June 2005. The consent order included the following pertinent provisions:

3. [N]o later than August 1, 2005, the Defendant will deliver to Mike Minikus, CPA, all tax-related materials which she and/or Mr. Minikus considers necessary to the preparation of her 2001, 2002 and 2003 tax returns and upon the preparation of joint returns for the parties for 2001, 2002 and 2003 by Mr. Minikus, Defendant will execute the same, provided it is lawful for her to do so.

. . .

5. Defendant hereby assumes all financial responsibility on all obligations listed on Schedule B attached hereto, and agrees to indemnify the Plaintiff and hold him harmless for any liability thereon . . .

6. Upon entry of this Order each party will promptly undertake to transfer to their name individually the balance owed on each debt assumed by the said party per Schedules B and C. Neither party will incur any obligation on behalf of the other party or attempt to pledge the other's credit.

Schedule B included certain credit card debts owed to MBNA, CitiFinancial, and Chase.

On 27 July 2005, plaintiff filed a motion for contempt. On 27 July 2005, the trial court entered an order requiring defendant to appear and show cause on 22 August 2005 why she should not be held in contempt of court for failing to abide by the terms of the consent order. On 25 August 2005, the court continued the matter upon defendant's motion based upon the withdrawal of defendant's counsel from the case, and to allow defendant time to deliver documents required by paragraph 3 of the consent order. Arising out of the 30 August 2005 hearing, the court entered an order finding that defendant had failed to comply with certain terms of the consent order and that she was in contempt of court.

Defendant was ordered incarcerated in the common jail of Alamance County until she complied with the terms of the consent order. The incarceration was stayed upon the following conditions:

1) By 2 October 2005 defendant take action required to remove plaintiff from debts assigned to defendant under the consent order;

2) Send a copy of the consent order to each major credit reporting agency with a letter acknowledging her responsibility for the debts;

3) Deliver to plaintiff's accountant all documentation for her 2002 and 2003 tax returns;

4) Appear before the court on 3 October 2005 and bring with her completed 2002 and 2003 separate income tax returns, as well as a joint tax return for 2001, and any evidence that she contends that it would be unlawful for her to sign a joint return;

5) Appear before that court on 17 October 2005 with completed 2002 and 2003 joint income tax returns prepared by plaintiff's accountant. If she contends that the execution of these returns is unlawful, she is to produce evidence of such, and also present what she intends would be lawful returns for her to sign.

On 14 October 2005, defendant failed to appear before the court and had failed to comply with other conditions that stayed her incarceration. The court found defendant to be in criminal contempt for violating the court's prior orders. Defendant was directed to appear before the court on 17 October 2005.

On 17 October 2005, defendant, in open court, executed the 2001 joint tax return. The remaining matters could not be reached and were continued until 31 October 2005. Defendant went out of state on 31 October 2005 and the matter was continued to 7 November 2005.

On 7 November 2005, defendant did not appear in court. Her attorney advised the court that he had received a fax that morning discharging him from further representation. Defendant's counsel was allowed to withdraw. The trial court entered another show cause order directing defendant to appear on 28 November 2005 to show cause why she should not be punished for contempt for failure to sign the 2002 and 2003 joint tax returns and failing to comply with the provisions of the consent order as to the debts assigned to her. The court further ordered that if defendant failed to appear on 28 November 2005 she was to be arrested. Defendant was arrested and released from custody on 12 December 2005.

On 6 April 2006, plaintiff filed a motion alleging that although defendant had executed the 2001, 2002 and 2003 joint returns, that the Internal Revenue Service ("IRS") requested that additional documents be filed in conjunction with the amended returns, and that defendant refused to sign the documents. The motion further asserted that the forms had to be filed immediately because of a statute of limitations issue. In addition, plaintiff alleged that defendant had refused to pay off the credit card debts. The motion sought a show cause order from the court, which was issued on 6 April 2006, setting a hearing for 8 May 2006.

The 8 May 2006 hearing was continued based upon a note from defendant's physician until 5 June 2006. On that date, a hearing was conducted, with defendant appearing *pro se*. The trial court entered

an order concluding that defendant was in contempt of court and once again ordering defendant's incarceration in the Alamance County jail. Defendant could purge herself of contempt by doing the following:

1) Signing form 1040X as to the 2001, 2002 and 2003 joint tax returns by 9 June 2006;

2) Paying to accountant Michael J. Minikus the sum of $11,724.00 as an expert witness fee by 5 September 2006;

3) Paying attorney's fees to plaintiff's counsel in the amount of $11,235.53 by 5 September 2006;

4) Paying in full the two credit card debts by 5 September 2006.

From this order, defendant appeals.

## II. Notice of Contempt Proceedings

[1] In defendant's first argument, she contends that the court erred in not giving her due notice of whether the contempt proceedings against her were civil or criminal in nature. We disagree.

Contempt of court may be civil or criminal in nature. *Bishop v. Bishop*, 90 N.C. App. 499, 503, 369 S.E.2d 106, 108 (1988). "A major factor in determining whether contempt is criminal or civil is the *purpose* for which the power is exercised." *Id.* (quoting *O'Briant v. O'Briant*, 313 N.C. 432, 434, 329 S.E.2d 370, 372 (1985)).

Criminal contempt is imposed in order to preserve the court's authority and to punish disobedience of its orders. *O'Briant*, 313 N.C. at 434, 329 S.E.2d at 372. Criminal contempt is a crime, and constitutional safeguards are triggered accordingly. *Id.* at 435, 329 S.E.2d at 373. On the other hand, when the court seeks to compel obedience with court orders, and a party may avoid the contempt sentence or fine by performing the acts required in the court order, the contempt is best characterized as civil. *Bishop*, 90 N.C. App at 504, 369 S.E.2d at 109; *O'Briant*, 313 N.C. at 434, 329 S.E.2d at 372. A civil contempt proceeding does not command the procedural and evidentiary safeguards that are required by criminal contempt proceedings. *Hartsell v. Hartsell*, 99 N.C. App. 380, 388, 393 S.E.2d 570, 575 (1990) (citing *Bishop*, 90 N.C. App. at 505-06, 369 S.E.2d at 109-10).

Both parties agree that the nature of the contempt proceedings in this case was civil. The 20 June 2006 order provided that the defendant is to be incarcerated *"until such time as* she complies

with the 16 June 2005 consent order." (emphasis added). The order further articulated specific actions required by defendant to avoid being held in contempt.

Although defendant admits that the trial court adjudicated her in civil contempt, she argues that she nonetheless should have been granted the full protections of a criminal contempt proceeding, since the notice of hearing did not clearly state whether the proceedings were criminal or civil. However, as acknowledged in plaintiff's brief, this Court in *Hartsell* rejected this argument. *Hartsell*, 99 N.C. App. at 386-89, 393 S.E.2d at 574-76. This Court is bound by its own decisions on an issue, even if the issue was decided in a different case, unless it has been overturned by a higher court. *In re Civil Penalty*, 324 N.C. 373, 383-84, 379 S.E.2d 30, 36-7 (1989). *Hartsell* constitutes binding precedent upon this Court, and we hold that because the contempt proceedings were clearly civil in nature, and since no relief of a punitive nature was ordered, defendant was not entitled to the procedural and evidentiary safeguards required in a criminal contempt proceeding. Defendant had adequate notice of the proceedings, and this assignment of error is without merit.

### III. Notice of Nature of Contempt Proceedings

[2] In defendant's second argument, she contends that, even if her notice of the contempt proceeding was proper, the trial court's order as it pertains to the Chase and MBNA credit cards should be vacated because she did not have due notice that the scope of the hearing would encompass issues related to those credit cards. We disagree.

N.C. Gen. Stat. § 5A-23(a)(1) (2005) governs civil contempt proceedings and provides that:

Proceedings for civil contempt may be initiated by motion of an aggrieved party giving notice to the alleged contemnor to appear before the court for a hearing on whether the alleged contemnor should be held in civil contempt.

The statute further requires a copy of the motion and notice to be served on the alleged contemnor at least five days before the hearing. *Id.* The party alleging civil contempt must include a sworn statement with the motion "setting forth the reasons why the alleged contemnor should be held in civil contempt." *Id.*

The record reveals that plaintiff's verified motion for an order to show cause filed 6 April 2006 alleged that "the Defendant has failed

WATSON v. WATSON

[187 N.C. App. 55 (2007)]

and refused to pay off the credit cards as ordered by the Court which failure has adversely affected the Plaintiff and his credit." In its 6 April 2006 order to show cause, the court specifically referenced plaintiff's motion. Defendant was properly served with both the motion and the court's order. Read together, these documents constitute adequate notice to defendant that her inaction pertaining to the credit cards was alleged as a basis for contempt.

Furthermore, defendant did not object to the presentation of evidence on this issue at the contempt hearing. On the contrary, defendant presented evidence relating to the credit card debt, including offering exhibits. "[W]hen the contemnor [comes] into court to answer the charges of the show cause order, [s]he waive[s] procedural requirements." *Lowder v. Mills, Inc.*, 301 N.C. 561, 583, 273 S.E.2d 247, 260 (1981) (citation omitted). Defendant's active participation in the hearing on this issue, without objection, defeats her contention that she was without notice that the 5 June 2006 proceeding would include a review of her failure to take responsibility for the credit card payments.

This argument is without merit.

## IV. Authority of Trial Court to Order Payment of Debt

[3] In her third argument, defendant contends that the consent order merely required her to assume financial responsibility for the credit card debts, and that the trial court erred in holding her in contempt for her failure to comply with the court order as it related to the credit cards. We disagree.

The consent order provided that defendant "hereby assumes all financial responsibility on all obligations listed on Schedule B attached hereto, and agrees to indemnify the Plaintiff and hold him harmless for any liability thereon . . ." Schedule B indicates that at the time of the consent order there were three outstanding credit cards, including an MBNA card, a CitiFinancial card, and a Chase card. The consent order further provided that "[u]pon entry of this Order each party will promptly undertake to transfer to their name individually the balance owed on each debt assumed by the said party . . ." The clear purpose of these provisions of the consent order was to relieve plaintiff of responsibility for those debts assumed by defendant.

The trial court made the following findings of fact pertaining to these debts:

10. That the Defendant has failed and refused to comply with the June 16, 2005 Consent Order and subsequent Orders entered by this Court requiring the Defendant to assume all financial responsibility for MBNA credit card account number [0237], Citi Financial credit card number [2486], Chase credit card account number [4034] as well as any other outstanding and unpaid obligation incurred by the Defendant and not disclosed in the June 16, 2005 Consent Order.

11. That, at the present time, there is a balance owed on the Chase account in the amount of $10,299.57 and an amount owed on the MBNA account in the amount of $21,815.11. Both accounts continue to be listed as Plaintiffs obligation.

Defendant argues that she made good faith efforts to have plaintiff's name removed from these accounts, but was unable to do so.

The standard of review for contempt proceedings is limited to determining whether there is competent evidence to support the findings of fact and whether the findings support the conclusions of law. *Sharpe v. Nobles*, 127 N.C. App. 705, 709, 493 S.E.2d 288, 291 (1997) (citation omitted). "Findings of fact made by the judge in contempt proceedings are conclusive on appeal when supported by any competent evidence and are reviewable only for the purpose of passing upon their sufficiency to warrant the judgment." *Hartsell*, 99 N.C. App. at 385, 393 S.E.2d at 573 (citation omitted). "North Carolina's appellate courts are deferential to trial courts in reviewing their findings of fact." *Harrison v. Harrison*, 180 N.C. App. 452, 637 S.E.2d 284, 286 (2006).

We hold that the findings of fact pertaining to the credit card accounts are supported by competent evidence, and are thus binding upon this Court.

We next turn to whether these findings support the trial court's conclusion that defendant was in contempt of court for "her failure to comply with the Court Order as it relates to two credit card accounts." The consent order required defendant to do three things: (1) assume all financial responsibility on all obligations listed on Schedule B; (2) indemnify and hold harmless plaintiff from "any liability thereon"; and (3) promptly undertake to transfer to her name the Schedule B debts. Defendant has done none of these things. Her obligation was to transfer the accounts into her name individually, not to remove plaintiff's name from the accounts. Nearly one year after the execution of the consent order defendant had failed to com-

WATSON v. WATSON

[187 N.C. App. 55 (2007)]

ply with these provisions. These debts had been the subject of court orders entered on 23 August 2005 and 14 October 2005. Given this history, the trial court properly found that defendant was in contempt of court for failure to comply with these provisions of the consent order.

"The order of the court holding a person in civil contempt must specify how the person may purge himself of the contempt." N.C. Gen. Stat. § 5A-22 (2005). The court's conditions under which defendant can purge herself of contempt cannot be vague such that it is impossible for defendant to purge herself of contempt, *Cox v. Cox*, 133 N.C. App. 221, 226, 515 S.E.2d 61, 65 (1999), and a contemnor cannot be required to pay compensatory damages. *Hartsell*, 99 N.C. App. 380, 390-92, 393 S.E.2d 570, 577-78.

In the instant case, the court clearly and unambiguously articulated what action defendant was required to undertake relating to the credit cards in order to purge herself of contempt:

d. Pay in full the Chase credit card account number [9036] (present account number) and MBNA credit card account number [7652] (present number) on or before September 5, 2006.

The consent order obligated defendant to relieve plaintiff of financial responsibility for the credit cards. Although defendant contends that the obligation to "assume financial responsibility" for the credit cards is not synonymous with paying off the credit card obligations, we hold that the trial court properly ordered defendant to pay the credit card debt as the only means of forcing defendant to comply with the terms of the consent order. This assignment of error is without merit.

Defendant further contends that she was not responsible for the Chase credit card ending in -9036. While she acknowledges that she agreed to take responsibility for the Chase credit card ending in -4034 listed in Schedule B, as well as "any other outstanding and unpaid obligation incurred by the defendant and not disclosed hereunder," she challenges the court's finding that either: 1) she incurred an obligation for the Chase credit card ending in -9036, or 2) the Chase credit card ending in -9036 was a transfer of the balance of the previous Chase card ending in -4034.

In accordance with the appropriate standard of review in contempt proceedings, we examine the record to determine whether there was competent evidence to support a finding that the Chase

card ending in -9036 was encompassed in the debts listed in Schedule B to the consent order. *See Sharpe,* 127 N.C. App. at 709, 493 S.E.2d at 291. The record reveals that plaintiff testified that the -9036 account was a transfer from "one of those three accounts." Plaintiff testified that he learned of the account when he received a letter from an attorney firm hired by Chase Manhattan to collect the balance on the account, and that the billing address of the -9036 card was that of defendant's place of business. Defendant neither contradicted plaintiff's testimony nor objected to it. We cannot agree with defendant's contention that "there is no evidence that [she] incurred any obligation for the Chase credit card account ending in -9036." We find that there is competent evidence in the record to support the court's finding that the Chase card ending in -9036 was defendant's responsibility. This argument is without merit.

### V. Present Means and Ability to Comply

**[4]** In her fourth argument, defendant contends that the trial court's finding that she had the present means and ability to satisfy the credit card obligations is not supported by competent evidence. We disagree.

Civil contempt is designed to coerce compliance with a court order, and a party's ability to satisfy that order is essential. *Adkins v. Adkins,* 82 N.C. App. 289, 293, 346 S.E.2d 220, 222 (1986). Because civil contempt is based on a willful violation of a lawful court order, a person does not act willfully if compliance is out of his or her power. *Henderson v. Henderson,* 307 N.C. 401, 408, 298 S.E.2d 345, 350 (1983). "Willfulness constitutes: (1) an ability to comply with the court order; and (2) a deliberate and intentional failure to do so." *Sowers v. Toliver,* 150 N.C. App. 114, 118, 562 S.E.2d 593, 596 (2002) (citation omitted). Ability to comply has been interpreted as not only the present means to comply, but also the ability to take reasonable measures to comply. *Teachey v. Teachey,* 46 N.C. App. 332, 334, 264 S.E.2d 786, 787 (1980). A general finding of present ability to comply is sufficient when there is evidence in the record regarding defendant's assets. *Adkins,* 82 N.C. App. at 292, 346 S.E.2d at 222.

In the instant case, the trial court found that the defendant was able to take reasonable measures to comply with the court order to pay off the credit card debts. In its 14 October 2005 order, the court found that defendant had in excess of $580,000.00 of equity in real estate in her name individually. In the June 2006 Contempt Order, the court made the following findings of fact:

12. Defendant continues to own all of the realty awarded to her under the June 16, 2005 Consent Order which the Court has earlier found to have a combined net equity in excess of $500,000.00. Defendant contends two of the properties are currently listed for sale and the Chapel Hill property continues to be rented.

. . .

14. That the Defendant has had and *continues to have* the present means and ability with which to satisfy the credit card obligations assigned to her . . . (emphasis added).

The court afforded defendant 90 days from the time of the contempt hearing on 5 June 2006 to comply with the order, providing defendant an opportunity to sell the properties and acquire the funds to satisfy the order.

This Court has held that prior findings of a present ability to pay may be *res judicata* as to future proceedings on that issue. *Abernethy v. Abernethy*, 64 N.C. App. 386, 387-88, 307 S.E.2d 396, 397 (1983). Defendant attempts to distinguish *Abernethy* by pointing out that, since no set sum was ordered in the consent order or the 14 October 2005 order, her ability to pay has not been litigated. However, since we hold that at the time of the 20 June 2006 contempt order defendant had the ability to take reasonable measures to comply with the court order, *Abernethy* is thus irrelevant to our review.

We hold there was competent evidence to support the court's finding that defendant had the present means and ability to satisfy the credit card debt obligations. This argument is without merit.

## VI. Failure to Execute Joint Tax Returns

[5] In her fifth argument, defendant contends that the trial court erred in holding her in contempt for failure to execute the 2001 and 2002 joint tax returns. We disagree.

In order to find a party in civil contempt, a court must find that "[t]he purpose of the order may still be served by compliance with the order[.]" N.C. Gen. Stat. § 5A-21(a)(2) (2005). Civil contempt is inappropriate where a defendant has complied with the previous court orders prior to the contempt hearing. *Hudson v. Hudson*, 31 N.C. App. 547, 551, 230 S.E.2d 188, 190 (1976).

The consent order that the parties entered into provided that defendant would execute the parties' joint tax returns upon their preparation by plaintiff's CPA as long as it was lawful for her to do so. The purpose of filing amended joint tax returns was to decrease plaintiff's tax liability. Defendant argues that, since she did in fact sign the 2001 and 2002 joint tax returns prior to the contempt hearing, the court was without the authority to adjudicate her in civil contempt for failing to execute the additional documents required by the IRS. Defendant refused to sign 1040X forms for each tax year. At the contempt hearing, CPA Mike Minikus (Minikus) explained he received notices from the IRS that the joint returns could not be processed until the parties each signed and filed a 1040X form for each year. Thus, the 1040X forms which defendant refused to execute were part of the process of filing the amended joint tax returns. The trial court was correct in concluding that defendant willfully failed to timely execute the amended tax returns.

Defendant argues that she had a valid excuse for refusing to execute the 2001 and 2002 1040X forms. She claims that she received information from an IRS agent regarding the 2001 1040X form and was told she did not need to file it. Defendant argues that her failure to comply with the consent order cannot be willful due to a valid excuse. We disagree.

Defendant relies on *Hancock v. Hancock* to support her argument that her conduct was not willful. In *Hancock*, this Court found that plaintiff "did everything possible" to comply with the trial court's order, and that plaintiff could not be held in contempt because she did not act purposefully, deliberately, or with knowledge and stubborn resistance to violate the court order. *Hancock*, 122 N.C. App. 518, 523, 471 S.E.2d 415, 419 (1996). The instant case is distinguishable from *Hancock*. Minikus testified that he personally contacted defendant and requested that she execute the 1040X form for 2001. Further, defendant testified at the hearing that she had no objection to signing the documents. We hold defendant's refusal to execute the 1040X forms was knowingly, deliberate, and part of a series of recalcitrant acts designed to frustrate the filing of amended joint tax returns required by the express terms of the consent order. There was competent evidence to support the court's finding of contempt for defendant's failure to execute the 2001 and 2002 joint tax returns.

Defendant further argues that the IRS had already disallowed the 2001 joint tax return, and that Minikus testified that the deadline for filing the 2002 return passed on 15 April 2006, five days prior to the

**WATSON v. WATSON**

[187 N.C. App. 55 (2007)]

contempt order. Defendant argues that she could not be held in contempt for failing to execute the 1040X forms for 2001 and 2002 because the purpose of the consent order was no longer served by the execution of these documents.

We reject this argument. First, the purpose of the order could still be served by defendant's signing of the 1040X form for 2003. Second, Minikus testified at the hearing that the signing of the form 1040X "would be helpful" and would show the parties' due diligence when requesting an extension for the 2002 return from the IRS. Thus, we find that there is competent evidence that signing the 1040X forms would still accomplish the order's purpose. This argument is without merit.

### VII. Attorneys' Fees and Expert Witness Fees

[6] In her sixth argument, defendant contends the trial court erred in ordering her to pay attorneys' fees and expert witness fees. We agree in part and disagree in part.

### A. Attorneys' Fees

"It is settled law in North Carolina that ordinarily attorneys fees are not recoverable as an item of damages or of costs, absent express statutory authority for fixing and awarding them." *Baxley v. Jackson*, 179 N.C. App. 635, 634 S.E.2d 905, 908 (2006) (quoting *Records v. Tape Corp. and Broadcasting System v. Tape Corp.*, 18 N.C. App. 183, 187, 196 S.E.2d 598, 602 (1973)). Generally, attorney's fees and expert witness fees may not be taxed as costs against a party in a contempt action. *Id.* (citation omitted).

However, our Courts have ruled that the trial court may award attorney's fees in certain civil contempt actions. *Id.* In *Conrad v. Conrad*, this Court held that:

> [T]he contempt power of the district court includes the authority to require one to pay attorney fees in order to purge oneself from a previous order of contempt for failing and refusing to comply with an equitable distribution order.

*Conrad*, 82 N.C. App. 758, 760, 348 S.E.2d 349, 350 (1986). Defendant acknowledges the holding in *Conrad* in her brief, but makes no attempt to distinguish the holding from the facts of this case.

In its 20 June 2006 contempt order, the court ordered defendant to pay $11,235.53 towards plaintiff's counsel fees as a condition of

purging herself of contempt. The attorneys' fees ordered in this case relate to the enforcement of the parties' June 2005 equitable distribution consent order. Defendant makes no argument that the amount of fees awarded was improper or not supported by the evidence. This argument is without merit.

### B. Expert Witness Fees

"The general rule is that, unless authorized by express statute provision, witness fees cannot be allowed and taxed for a party to the action." *City of Charlotte v. McNeely*, 281 N.C. 684, 692, 190 S.E.2d 179, 186 (1972) (citation omitted). While it is proper for a court to award attorney's fees in a contempt proceeding, we have held that a court has no authority to award *costs* to a private party. *See Green v. Crane*, 96 N.C. App. 654, 659, 386 S.E.2d 757, 760 (1990) (citation omitted). The statute governing civil contempt, N.C. Gen. Stat. § 5A-21, does not authorize a trial court to award costs to a party in a contempt proceeding to enforce an equitable distribution consent order.

The court ordered defendant to pay fees to Minikus, plaintiff's CPA, in the amount of $11,724.00. Although the court's order requiring defendant to pay attorneys' fees was proper, we hold that it was error for the court to assess an expert witness fee against defendant. The portion of the court's order requiring defendant to pay expert witness fees is reversed.

Remaining assignments of error listed in the record but not argued in defendant's brief are deemed abandoned. N.C.R. App. P. 28(b)(6) (2007).

AFFIRMED in part and REVERSED in part.

Judges ELMORE and STROUD concur.