ELMORE, Judge.
 

 *209
 
 Jasmine Manish Gandhi (plaintiff) appeals from the trial court's Order denying her motion for contempt, granting Manish Ishwarlal Gandhi's (defendant) oral motion for extension of time pursuant to Rule 6(b), and concluding that defendant's conduct constituted excusable neglect. After careful consideration, we reverse the trial court's Order and remand.
 

 I. Background
 

 The parties were married on 3 April 1994, separated on 27 August 2009, and divorced on 16 February 2011. On 24 February 2012, the trial court entered an "Agreement and Consent Order and Judgment on Equitable Distribution" (consent order) resolving all issues raised by the parties in connection with their equitable distribution claims. Stipulation
 
 *210
 
 number two states, "[T]he parties waive further formal Findings of Fact and Conclusions of Law ... and nevertheless agree that this Consent Order and Judgment shall be binding upon them the same as if entered by a District Court Judge after a hearing on the merits of all matters now pending." In paragraph 1(e), the court ordered that "[a] cash distributive award of $590,000.00 or $700,000 as more particularly described in paragraph 3 below" be distributed to plaintiff.
 

 Paragraph 1(f) states,
 

 No later than five (5) days after Plaintiff receives $400,000 from Defendant on the Distributive Award, Plaintiff shall remove Defendant's name from any and all debt she incurred for which Defendant is liable including but not limited to the SunTrust debt account numbers ending 1280 and 1256 or pay the entire balance in full on both accounts and close the accounts[.]
 

 Paragraph 3 provides defendant with two different payment options:
 

 As referred to in Paragraph 1 of this decretal, the Defendant shall pay to the Plaintiff a Distributive Award in Equitable Distribution, (in addition to the other transfers of property [to] the Plaintiff provided for herein) in the total amount of $700,000.00 if paid within (3) years or $590,000 if paid within Thirty (30) days which shall be payable as follows:
 

 a. Within 30 days of the entry of this Consent Order and Judgment, Defendant will pay the Plaintiff $590,000. If he is not able to pay the Plaintiff $590,000 within 30 days, he will pay the Plaintiff $700,000 with such payment to be made as follows:
 

 1. Within 30 days of the entry of this Consent Order and Judgment the Defendant will pay to the Plaintiff the cash sum of $400,000.00.
 

 2. Within 3 years of the entry of this Consent Order and Judgment the Defendant will pay to the Plaintiff the cash sum of $300,000.00, payable as follows:
 

 2.1. First $50,000 payable on or before February 15, 2013.
 

 2.2. Second $50,000 payable on or before February 15, 2014.
 

 *211
 
 2.3. Remaining $200,000 payable on or before February 15, 2015.
 

 On 20 March 2012, defendant paid plaintiff $400,000. Prior to entry of the consent order, defendant applied for an equity line of credit in the amount of $200,000 in order to pay the remaining $190,000 owed within thirty days under option number one. The closing date for the line of credit was scheduled for 22 March 2012, and the thirty-day deadline under option number one (the deadline) was 26 March 2012. Less than two days before the closing date, defendant learned that he would not receive $200,000, as requested, and instead he would receive only $164,000. In order to pay the remainder due under option number one, defendant borrowed $26,000 from his brother but he did not receive the funds until after the deadline.
 

 On 3 April 2012-eight days after the deadline-defendant's attorney e-mailed plaintiff informing her that "the remaining $190,000 installment payment on the $590,000 distributive award option" was available and
 
 *187
 
 "[w]e are authorized to release the $190,000 payment to you upon your execution of the attached notice of satisfaction." Additionally, defendant's attorney stated that defendant had not received documentation showing his name had been removed from the SunTrust debt accounts as provided in paragraph 1(f) of the consent order. Plaintiff was unwilling to sign the satisfaction. Defendant's attorney sent plaintiff a letter on 22 June 2012 stating that, to date, plaintiff refused to pick up the $190,000 check that had been available since 3 April 2012 and that it would remain available until 29 June 2012. The letter provided that if plaintiff did not claim the check by 29 June 2012, defendant would assume plaintiff did not intend to accept the payment. Plaintiff did not pick up the check.
 

 Plaintiff filed a motion for order to show cause in district court on 25 February 2013 asking the court to require defendant "to appear and show cause why he should not be held in contempt for failing to comply with a prior order of this court dated February 24, 2012." The district court entered an order on 15 March 2013 ordering defendant to appear and show cause why the court should not hold him in contempt. On 20 August 2013, defendant delivered to plaintiff a letter and a $50,000 check, pursuant to option number two under paragraph 3(a)(2.1), "made under protest in response to the Motion for Order to Show Cause." The letter further stated,
 

 [Defendant] maintains his position that he substantially complied with the Agreement and Consent Order and
 
 *212
 
 Judgment on Equitable Distribution, entered February 24, 2012, by attempting to pay the remaining $190,000 on April 3, 2012, of the total $590,000 due, and that [plaintiff's] refusal to accept his check for $190,000 on that date was an unreasonable and calculated effort to force him to pay her an additional $110,000. Nonetheless, because [defendant] does not want to be held in contempt, he is making a payment of $50,000 to [plaintiff]. [Defendant] reserves his right to a hearing on the question of whether the payment he already tendered for $190,000 was and is valid, and he reserves all rights in that regard.
 

 The parties appeared for a hearing on 26 August 2013, and on 12 November 2014, the district court entered an Order containing the following conclusions of law:
 

 1. It would be inequitable to disallow Defendant to pay under Option Number 1 solely because Defendant was a mere eight days late (and six business days late) in tendering the $190,000 under Option Number 1.
 

 2. That the Defendant's failure to pay $590,000 as a distributive award within 30 days of the entry of the ED Judgment was the result of excusable neglect within the meaning of Rule 6(b) of the North Carolina Rules of Civil Procedure.
 

 3. The Defendant is entitled to an extension of time to perform under Option Number 1 through and including April 3, 2012, the date that Defendant tendered the $190,000.
 

 4. It is equitable and appropriate for the Court, in its discretion, to extend the deadline under Option Number 1 as set forth in the Order below.
 

 5. The Defendant is not in contempt of this Court.
 

 6. Defendant is entitled to a dollar for dollar credit for the $50,000 payment made under protest to the Plaintiff referred to in paragraph 19 of the Findings of Fact above and for any similar payment that has been made to Plaintiff since the August 26, 2013 hearing on this matter.
 

 7. Neither party is entitled to attorney's fees associated with Plaintiff's Motion to Show Cause.
 

 Plaintiff appeals.
 

 *213
 

 II. Analysis
 

 A. Motion for Contempt
 

 Plaintiff first argues that the trial court erred in determining that defendant was not in civil contempt because (1) the consent order remains in force; (2) its purpose may still be served by compliance with it; (3) defendant's noncompliance was willful; and (4) defendant clearly had the ability to comply with the order, citing N.C. Gen.Stat. § 5A-21 (2013). Defendant argues that the trial court properly found he was not in
 
 *188
 
 contempt because the evidence supports the trial court's findings of fact, which in turn support its conclusions of law. Defendant argues the evidence showed he made all reasonable efforts to pay plaintiff $590,000 before the option number one deadline, and he paid $50,000 under protest pursuant to option number two in order to remain in compliance with the consent order.
 

 "The standard of review for contempt proceedings is limited to determining whether there is competent evidence to support the findings of fact and whether the findings support the conclusions of law."
 
 Watson v. Watson,
 

 187 N.C.App. 55
 
 , 64,
 
 652 S.E.2d 310
 
 , 317 (2007) (citing
 
 Sharpe v. Nobles,
 

 127 N.C.App. 705
 
 , 709,
 
 493 S.E.2d 288
 
 , 291 (1997) ). "Findings of fact made by the judge in contempt proceedings are conclusive on appeal when supported by any competent evidence and are reviewable only for the purpose of passing upon their sufficiency to warrant the judgment."
 

 Id.
 

 (quoting
 
 Hartsell v. Hartsell,
 

 99 N.C.App. 380
 
 , 385,
 
 393 S.E.2d 570
 
 , 573 (1990) ) (quotations omitted). "North Carolina's appellate courts are deferential to trial courts in reviewing their findings of fact."
 

 Id.
 

 (quoting
 
 Harrison v. Harrison,
 

 180 N.C.App. 452
 
 , 454,
 
 637 S.E.2d 284
 
 , 286 (2006) ) (quotations omitted).
 

 N.C. Gen.Stat. § 5A-21 provides,
 

 (a) Failure to comply with an order of a court is a continuing civil contempt as long as:
 

 (1) The order remains in force;
 

 (2) The purpose of the order may still be served by compliance with the order;
 

 (2a) The noncompliance by the person to whom the order is directed is willful; and
 

 (3) The person to whom the order is directed is able to comply with the order or is able to take reasonable
 
 *214
 
 measures that would enable the person to comply with the order.
 

 N.C. Gen.Stat. § 5A-21 (2013). "Civil contempt is inappropriate where a defendant has complied with the previous court orders prior to the contempt hearing."
 
 Watson,
 

 187 N.C.App. at 67
 
 ,
 
 652 S.E.2d at
 
 319 (citing
 
 Hudson v. Hudson,
 

 31 N.C.App. 547
 
 , 551,
 
 230 S.E.2d 188
 
 , 190 (1976) (concluding that the defendant purged himself of any possible contempt by paying the amount owed after the plaintiff filed the motion but before the hearing on the motion)).
 

 Regarding civil contempt, the trial court made the following finding of fact:
 

 19. In August, 2013, prior to this hearing on Plaintiff's Motion to Show Cause, Defendant made a $50,000 payment to Plaintiff under protest, which, had this Court determined that Option Number 2 applied, would have brought him in compliance with the ED Judgment. When making that payment, Defendant expressly reserved and did not waive his right to continue to take the position that Option Number 1 applied and that the Court should allow him the additional 8 days grace period/extension of time as set forth herein to pay under Option Number 1.
 

 It then concluded, "Defendant is not in contempt of this Court."
 

 Because defendant made a $50,000 payment under option number two, albeit "under protest," he complied with the consent order prior to the contempt hearing and, thus, civil contempt is inappropriate.
 
 See
 

 Watson,
 

 187 N.C.App. at 67
 
 ,
 
 652 S.E.2d at
 
 319 ;
 
 Hudson,
 

 31 N.C.App. at 551
 
 ,
 
 230 S.E.2d at 190
 
 . Therefore, the trial court did not err in denying plaintiff's motion for contempt.
 

 B. Rule 6(b) Motion for Extension of Time
 

 Plaintiff argues, " Rule 6(b) allows the trial court to extend the time for a party to do an act required to be done pursuant to the Rules of Civil Procedure[.]" Plaintiff maintains that Rule 6(b) does not permit the trial court to amend a final order, and that "[a] final judgment or order may only be altered or amended by the trial court based on a proper motion or notice and the grounds set out in Rules 52, 59, and 60 of the North Carolina Rules of Civil Procedure." Defendant claims the trial court had the authority to grant defendant's motion for an extension of time pursuant to Rules 6(b) and 7 of the North Carolina Rules of Civil Procedure.
 

 *215
 
 Rule 6(b) provides,
 

 *189
 
 (b) Enlargement.-When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order. Upon motion made after the expiration of the specified period, the judge may permit the act to be done where the failure to act was the result of excusable neglect. Notwithstanding any other provisions of this rule, the parties may enter into binding stipulations without approval of the court enlarging the time, not to exceed in the aggregate 30 days, within which an act is required or allowed to be done under these rules, provided, however, that neither the court nor the parties may extend the time for taking any action under Rules 50(b), 52, 59(b), (d), (e), 60(b), except to the extent and under the conditions stated in them.
 

 N.C. Gen.Stat. § 1A-1, Rule 6(b) (2013).
 

 This Court recently stated, "As an initial matter,
 
 the only
 
 time periods that may be extended based upon the authority available pursuant to N.C. Gen.Stat. § 1A-1, Rule 6(b), are those established by the North Carolina Rules of Civil Procedure."
 
 Glynne v. Wilson Med. Ctr.,
 
 --- N.C.App. ----, ----,
 
 762 S.E.2d 645
 
 , 651-52 (2014),
 
 review dismissed by agreement,
 

 367 N.C. 811
 
 ,
 
 768 S.E.2d 115
 
 (2015) (emphasis added) (citing
 
 Chicora Country Club, Inc. v. Town of Erwin,
 

 128 N.C.App. 101
 
 , 108,
 
 493 S.E.2d 797
 
 , 801 (1997) (stating that "our courts have consistently held that a trial court's authority to extend the time specified for doing a particular act [pursuant to N.C. Gen.Stat. § 1A-1, Rule 6(b) ] is limited to the computation of [those] time period[s] prescribed by the Rules of Civil Procedure"));
 
 see also
 

 Lemons v. Old Hickory Council,
 

 322 N.C. 271
 
 , 277,
 
 367 S.E.2d 655
 
 , 658 (1988) (holding "that pursuant to Rule 6(b) our trial courts may extend the time for service of process under Rule 4(c)");
 
 Riverview Mobile Home Park v. Bradshaw,
 

 119 N.C.App. 585
 
 , 587-88,
 
 459 S.E.2d 283
 
 , 285 (1995) (holding that the magistrate did not have the authority under Rule 6(b) to extend the time for plaintiff to pay the filing fees because the time limitation was not contained in the Rules of Civil Procedure but was found in N.C. Gen.Stat. § 7A-228 );
 

 *216
 

 Cheshire v. Aircraft Corp.,
 

 17 N.C.App. 74
 
 , 80,
 
 193 S.E.2d 362
 
 , 365 (1972) ( " Rule 6(b) is applicable to enlargement of time for filing pleadings, motions, interrogatories, the taking of depositions, etc.").
 

 Based on our appellate courts' decisions regarding the scope of Rule 6(b), the trial court erred as a matter of law in extending the deadline in the consent order pursuant to Rule 6(b) because the deadline was not a time period specified in our Rules of Civil Procedure. Because the trial court did not have authority to enlarge the time period under Rule 6(b), we need not address the excusable neglect prong of the analysis.
 

 C. Modification of Consent Order
 

 Defendant argues that "assuming for the sake of argument that the trial court actually 'modified' the Consent Judgment, the court had the inherent authority to do so pursuant to the rule set forth in
 
 Walters v. Walters,
 

 307 N.C. 381
 
 ,
 
 298 S.E.2d 338
 
 (1983)." Defendant states, "Plaintiff was bound by
 
 Walters
 
 to expect that the court could-for reasons of law or equity-exercise its judgment to alter the unsatisfied distributive-award provision of the parties' Consent Judgment to allow for, among other circumstances, a bank delay that the Plaintiff knew about." Plaintiff contends that under
 
 Walters,
 
 a party may not seek modification of a property settlement provision. Plaintiff maintains, "If an equitable distribution order is entered by consent, the judge may not amend the judgment absent consent of both parties or proof that (1) consent was not given, or (2) the judgment was obtained by mutual mistake or fraud."
 

 "A consent judgment incorporates the bargained agreement of the parties."
 
 Stevenson v. Stevenson,
 

 100 N.C.App. 750
 
 , 752,
 
 398 S.E.2d 334
 
 , 336 (1990). In
 
 Walters v. Walters,
 
 our Supreme Court attempted to eliminate "great confusion in the area of family law" regarding consent judgments.
 
 307 N.C. at 386
 
 ,
 
 298 S.E.2d at 342
 
 . It stated,
 

 *190
 
 As an order of the court, the court adopted separation agreement is enforceable through the court's contempt powers. This is true for all the provisions of the agreement since it is the court's order and not the parties' agreement which is being enforced.
 
 Bunn v. Bunn,
 

 262 N.C. 67
 
 ,
 
 136 S.E.2d 240
 
 (1964) ;
 
 Rowe v. Rowe,
 

 305 N.C. 177
 
 ,
 
 287 S.E.2d 840
 
 (1982). In addition to being enforceable by contempt, the provisions of a court ordered separation agreement within a consent judgment are modifiable within certain carefully delineated limitations. As the law now stands, if the provision in question concerns alimony, the issue of modifiability is determined by
 
 *217
 
 G.S. 50-16.9. However, if the provisions in question concern some aspect of a property settlement, then it may be modified only so long as the court's order remains unsatisfied as to that specific provision. "An action in court is not ended by the rendition of a judgment, but in certain respects is still pending until the judgment is satisfied."
 
 Abernethy Land and Finance Co. v. First Security Trust Co.,
 

 213 N.C. 369
 
 , 371,
 
 196 S.E. 340
 
 , 341 (1938) ;
 
 Walton v. Cagle,
 

 269 N.C. 177
 
 ,
 
 152 S.E.2d 312
 
 (1967). Therefore, property provisions which have not been satisfied may be modified.
 

 ....
 

 These court ordered separation agreements, as consent judgments, are modifiable, and enforceable by the contempt powers of the court, in the same manner as any other judgment in a domestic relations case.
 

 Id.
 

 at 385-86
 
 ,
 
 298 S.E.2d at 341-42
 
 .
 

 Under
 
 Walters,
 
 provisions of a court-adopted separation agreement may be modified within certain carefully delineated limitations.
 
 See, e.g.,
 
 N.C. Gen.Stat. § 50-16.9(a) (2013) ("An order of a court of this State for alimony or postseparation support, whether contested or entered by consent, may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party or anyone interested."). In
 
 Hinson v. Hinson,
 

 78 N.C.App. 613
 
 , 615,
 
 337 S.E.2d 663
 
 , 664 (1985), this Court discussed the modifiability of consent judgments:
 

 A motion to amend a judgment must be made within ten days after entry thereof. G.S. 1A-1, R. Civ. P. 59(e). A motion for relief from a judgment on grounds of mistake, inadvertence, surprise, or excusable neglect must be made within one year. R. Civ. P. 60(b). A motion to correct clerical mistakes may be made at any time, however. R. Civ. P. 60(a).
 

 Notably, here, the only motion that defendant made was an oral motion pursuant to Rule 6(b) after both parties' closing arguments at the contempt hearing on 26 August 2013-a year and a half after entry of the consent order. Whether defendant could have successfully made other motions to amend the consent order is not an issue now before this Court, and we reject defendant's argument that the trial court could
 
 sua sponte
 
 "exercise its judgment to alter" the consent order.
 

 *218
 
 Additionally, as plaintiff notes,
 

 Defendant had the opportunity to bargain for a later due date for the distributive award payment, to include language authorizing the trial court to grant an extension of time for him to make the payment, or to include a provision stating that he would not be liable for the additional $110,000.00 due under Option 2 if the delay in making the $590,000.00 payment due under Option 1 was caused by problems obtaining financing. Defendant did none of these things. Defendant instead failed to make the payment owed under Option 1 by the due date and then asked the trial court to modify the terms of the ED Order so that he would not have to comply with the provisions of Paragraph 3, which expressly contemplated that Defendant might not meet the Option 1 deadline and specifically imposed a penalty on Defendant if that occurred.
 

 Moreover, paragraph 1(f) of the consent order states, "No later than five (5) days after Plaintiff receives $400,000 from Defendant on the Distributive Award, Plaintiff shall remove Defendant's name from any and all debt she incurred[.]" The trial court's Order indicates that defendant did not pay plaintiff the $400,000 until 20 March 2012, six days before the deadline. Plaintiff testified at the
 
 *191
 
 contempt hearing that upon receiving the $400,000 she went to the bank to pay off the two loans. She stated, "even though it is a cashier's check, they have to wait, especially because of the amount of the check ... they had to wait a period of time for it to go through [.]" Plaintiff testified that as soon as the funds were credited to her account she paid off the loans.
 

 Although defendant was relying on the equity line of credit from BB & T, he stated at the contempt hearing that, prior to signing the consent order, he knew the joint equity lines at SunTrust were still open with a $120,000 balance. He noted, "And that was the major reason why BB & T would not approve, because there were two lines open in my name liable on those notes for $120,000, and they said they could not approve me more than $164,000." Defendant was aware of this financial situation prior to agreeing to the consent order, but he stated, "I kind of did not anticipate that that would cause a problem[.]" Although the trial court attempted to reach an equitable result, its conclusions of law cannot stand.
 

 *219
 

 III. Conclusion
 

 The trial court did not err in denying plaintiff's motion for contempt. The trial court did err in granting defendant's motion for extension of time pursuant to Rule 6(b). We reverse the trial court's Order and remand so the trial court can enter a new order requiring defendant to comply with option number two of the consent order.
 

 REVERSED AND REMANDED.
 

 Chief Judge McGEE and Judge DAVIS concur.