IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-443

No. COA21-483

Filed 5 July 2022

Wake County, No. 14 CVD 2713

KIMBERLY BOSSIAN, Plaintiff,

v.

DENNIS BOSSIAN, Defendant.

Appeal by Defendant from orders entered 29 April 2021 and 24 May 2021 by Judge Mark Stevens in Wake County District Court. Heard in the Court of Appeals 9 March 2022.

> *Tharrington Smith, LLP, by Jeffrey R. Russell, Alice C. Stubbs, and Casey C. Fidler, for Plaintiff-Appellee.*

> *John M. Kirby, for Defendant-Appellant.*

WOOD, Judge.

¶ 1        Defendant Dennis Bossian ("Defendant") appeals from Orders finding him in civil contempt, ordering his arrest, denying his Rule 59 motion, and granting Kimberly Bossian's ("Plaintiff") Rule 60 motion. After careful review of the record and applicable law, we affirm the Orders of the trial court.

## I.    Factual and Procedural Background

¶ 2        Plaintiff and Defendant married on August 22, 1998, separated on February 3, 2013, and are now divorced. The parties have two children born April 9, 2000, and August 28, 2002. On February 12, 2015, Wake County District Court Judge Christian

entered an Order for Permanent Child Custody and Child Support ("Custody and Support Order"). The Custody and Support Order granted primary custody of the two minor children to Plaintiff and secondary physical custody with visitation during the children's spring break and two weeks during the summer to Defendant, who resided in Rhode Island. The Custody and Support Order required Defendant to pay $1,225.87 in child support each month until the order was modified or terminated pursuant to the North Carolina Child Support Guidelines. On March 5, 2015, the trial court entered an Order for Equitable Distribution ("Equitable Distribution Order"), requiring Defendant to pay $1,800.00 to Plaintiff as a distributive award following the sale of the marital home.

¶ 3    Both the Custody and Support Order and the Equitable Distribution Order have remained in effect without modification since February 12, 2015, and March 5, 2015, respectively. In January 2016, Plaintiff and Defendant mutually agreed their younger son would move to Rhode Island with his father and Defendant would assume primary custody of him. The younger son resided in Rhode Island with Defendant from January 2016 until July 2018, at which time he returned to North Carolina to live with Plaintiff. Neither parent sought permission from the trial court to modify the Custody and Support Order.

¶ 4    On March 11, 2020, Plaintiff filed a Motion for Order to Show Cause and, in the alternative, a Motion for Contempt for Defendant's failure to pay child support in

the amount of $62,519.37; unreimbursed medical expenses in the amount of $5,871.50; and a distributive award payment owed to Plaintiff from the sale of the former marital home in the amount of $1,800.00. On May 1, 2020, the trial court entered an Order to Appear and Show Cause against Defendant; calendared Defendant's advisement hearing for July 23, 2020; and set the show cause hearing for August 25, 2020. At the July 23, 2020 hearing, Defendant signed a Waiver of Counsel, waiving his right to a court-appointed attorney. On August 11, 2020, Defendant, through counsel on a limited appearance, filed a Motion to Continue the show cause hearing, as well as a "Motion to Dismiss or Discontinue Plaintiff's Complaint."

¶ 5      On August 25, 2020, at calendar call held via WebEx, the Honorable Anna Worley denied Defendant's Motion to Continue and set the case for in-person hearing that afternoon in front of the Honorable Ashleigh Dunston "with the understanding that Defendant would be physically present for the live hearing." When the matter was called for hearing, Plaintiff and her attorney were present in the courtroom and Defendant appeared remotely via WebEx. At the afternoon hearing before Judge Dunston, Defendant objected to the WebEx hearing and requested a continuance to have his younger son serve as his witness. Defendant admitted that while he had booked a flight to North Carolina for the contempt hearing on August 24, 2020, to return to Rhode Island on August 26, 2020, he "would have been not only prejudiced

by not having [his son] testify, but also, upon his return to Rhode Island, . . . would have been subject to a 14-day quarantine." The trial court found that Defendant "intentionally chose not to appear in-person for the hearing; although he continuously stated that he wanted an in-person hearing" and that Defendant's request for an in-person hearing "was waived when he elected not to appear in court on August 25, 2020."

¶ 6          At the contempt hearing, Plaintiff testified Defendant possessed the ability to pay child supports as he is a licensed civil trial lawyer and is the head of civil litigation in Orabona Law Offices in Providence, Rhode Island. Plaintiff also testified Defendant is advertised on Orabona Law Offices' website as having tried more than a hundred jury trials and possessing an 85% success rate. Plaintiff testified Defendant told her he makes more than $100,000.00 per year and that "he took the new job with Orabona for a substantial pay increase." Additionally, Plaintiff testified Defendant previously worked for Rob Levine Law Offices; was a former equity partner in the law firm of Anderson, Zangari & Bossian; and was previously employed at CVS's corporate office. Plaintiff testified Defendant possesses income and assets in an amount sufficient to purge all amounts currently owed to her. Plaintiff's counsel presented evidence to show that Defendant last paid child support in the amount of $141.00 to Plaintiff in January 2016; offered evidence of the debt she had incurred to meet her reasonable expenses and pay legal fees; and requested Defendant be ordered

to pay her attorney's fees.

¶ 7        Defendant, appearing pro se, cross-examined Plaintiff regarding a "Consent modification of custody agreement," which he purported to be a part of the court file. However, Judge Dunston found that this "Consent modification of custody agreement" was not in the court file and would not permit it to be read into evidence. Defendant did not 1) dispute his income amount; 2) offer witnesses on his behalf; 3) testify that he paid Plaintiff any amount of money since the Custody and Support Order was entered; or 4) provide evidence of any payment made to Plaintiff since entry of the Custody and Support Order.

¶ 8        On September 18, 2020, Judge Dunston entered an Order for Civil Contempt and Attorney's Fees ("Contempt Order") finding Defendant in contempt for willfully violating prior orders of the Court. The trial court held Defendant's failure to comply with its Orders had been willful and without just cause or excuse. While the order did not make detailed findings regarding Defendant's income or expenses, it stated Defendant is a civil trial lawyer who earns more than $100,000.00 per year, which gives him the ability to pay child support owed pursuant to the entry of the Custody and Support Order and the ability to comply with this Contempt Order. Further, the trial court found that at the time of the Equitable Distribution Order, and at all relevant times thereafter, Defendant had the requisite means and ability to comply with the terms of that Order. The court also found that Plaintiff acted in good faith

in bringing this contempt proceeding, possessed insufficient means to defray the expenses of this action, and was entitled to an award of attorney's fees from Defendant.

¶ 9    In the Contempt Order, Judge Dunston took into consideration the terms of the parties' mutual agreement concerning the period their younger son resided with Defendant in Rhode Island and its impact upon Defendant's child support obligation. Recognizing that the child support terms of the Custody and Support Order could not be retroactively modified, the trial court set a lower purge amount for Defendant than what was otherwise owed to Plaintiff.

¶ 10    The trial court determined a modified child support arrearage based on its equitable calculation of (1) the number of months the younger son resided with his father in Rhode Island, and (2) the amount of child support Defendant owed to Plaintiff once the elder son reached the age of majority. The court set Defendant's child support purge amount at $25,527.02. Defendant was ordered to pay $5,871.50 for his portion of unreimbursed medical expenses, and $1,800.00 owed from the sale of their marital residence. The trial court ordered Defendant to pay a total purge amount of $31,398.52 by October 30, 2020. The court awarded Plaintiff $11,590.42 in attorney's fees, payable in installments beginning October 2020. The Contempt Order concluded "[t]he purposes of the Court's Orders can still be served by finding Defendant in civil contempt and ordering the purge conditions set forth herein" and

"Defendant has the ability to meet the purge conditions set forth herein and the ability to comply with this Order" and ordered:

> [i]f Defendant fails to meet the purge conditions by compliance . . . , he shall be taken into custody at 12:00 p.m. on November 2, 2020 and shall remain there until he purges himself of contempt by paying $33,198.52 . . . , and if he has not met his purge conditions by that date, an order for arrest shall be issued. No further notice will be provided as Defendant was advised in open court that he is in contempt."

¶ 11 On September 25, 2020, Plaintiff filed a Rule 60 Motion for Relief to correct alleged clerical errors in the Contempt Order. Plaintiff argued the Court miscalculated the equitable credits attributed to Defendant's purge amount. Specifically, the Contempt Order found that Defendant "owes [m]onthly child support . . . for one child for the period of January 2019 through August of 2020, of $971.29 for eight (8) months, in the total amount of $1,942.58"[1] in error when the order should have found Defendant owes monthly child support for one child for the period of January 2019 through August 2020, in the amount of $971.29 for twenty (20) months, in the amount of $19,425.80, because the number of months between January 2019 and August 2020 is twenty (20) months, not eight (8). As a result, Defendant's child

---

[1] It is apparent that the Contempt Order's finding is a miscalculation of the amount Defendant would have owed for payment of eight months of child support at a monthly amount of $971.29. This calculation equals $7,770.32, not $1,942.58.

support arrearages increased to $43,010.24. Thereafter, Defendant filed a Rule 59 Motion for Relief from the Civil Contempt and Attorney's Fees alleging, *inter alia*, the trial court erred because no evidence was presented to the Court of Defendant's present ability to pay, and Plaintiff was permitted to recover attorney's fees.

¶ 12        On April 29, 2021, the Honorable Mark Stevens presided over the hearing on the parties' respective Rule 59 and Rule 60 Motions. At the hearing, Defendant testified that if Judge Dunston made a clerical error in the Contempt Order, he would not contest it. Subsequently, Judge Stevens granted Plaintiff's Rule 60 motion. Next, Defendant contended there should be no finding of willful contempt because he had been unemployed since November 25, 2020, possessed no assets or retirement fund, and was currently unable to pay a purge amount. Judge Stevens denied Defendant's Rule 59 motion. At the conclusion of the hearing, the court inquired whether Defendant had purged his contempt as required by the Contempt Order. After Plaintiff and Defendant indicated no money had been paid towards the purge amount and Defendant testified as to his financial difficulty, Judge Stevens found he continued to be in contempt. After finding Defendant had the present ability to purge his contempt, Judge Stevens ordered Defendant to pay $9,300.00. ("Arrest Order"). Thereafter, Defendant was taken into custody.

¶ 13        On May 24, 2021, Judge Stevens entered two written Orders denying Defendant's Rule 59 motion and granting Plaintiff's Rule 60 motion, respectively.

The court modified the amount payable to purge contempt for child support, equitable distribution, and unreimbursed medical expenses to $50,681.74, payable by July 20, 2021; and in its Order granting Plaintiff's Rule 60 motion stated, "[e]xcept as modified herein, the remaining terms of the Contempt Order entered September 18, 2020, remain in full force and effect." Defendant now timely appeals from the trial court's "Arrest Order", "Order granting Plaintiff's Rule 60 motion," and "Order denying Defendant's Rule 59 motion."

## II. Discussion

¶ 14 Defendant raises several issues on appeal. We address each in turn.

### A. Defendant's Violation of the Contempt Order and His Subsequent Arrest

¶ 15 Defendant first argues that the only motions at the April 29, 2021 hearing before Judge Stevens were the Rule 59 and 60 motions and that the trial court erred in holding him in contempt for violating the Contempt Order when he was provided no notice of this potential proceeding and of his arrest. Defendant contends the lack of notice deprived him of the opportunity to present a defense in violation of his due process rights. We disagree.

¶ 16 "The standard of review for contempt proceedings is limited to determining whether there is competent evidence to support the findings of fact and whether the findings support the conclusions of law. 'Findings of fact made by the judge in

contempt proceedings are conclusive on appeal when supported by any competent evidence and are reviewable only for the purpose of passing upon their sufficiency to warrant the judgment.' " *Watson v. Watson*, 187 N.C. App. 55, 64, 652 S.E.2d 310, 317 (2007) (citation omitted).

¶ 17        Civil contempt is employed to coerce contumacious defendants into compliance with the orders of the court. "[T]he length of time that a defendant can be imprisoned in a *proper* case is not limited by law, since the defendant can obtain his release immediately upon complying with the court's order." *Brower v. Brower,* 70 N.C. App. 131, 133, 318 S.E.2d 542, 544 (1984) (citing *Jolly v. Wright*, 300 N.C. 83, 265 S.E. 2d 135 (1980)). Pursuant to N.C. Gen. Stat. § 5A-21(a), "[f]ailure to comply with a court order is a continuing civil contempt as long as:

> (1) The order remains in force;
>
> (2) The purpose of the order may still be served by compliance with the order;
>
> (2a) The noncompliance by the person to whom the order is directed is willful; and
>
> (3) The person to whom the order is directed is able to comply with the order or is able to take reasonable measures that would enable the person to comply with the order.

N.C. Gen. Stat. § 5A-21(a) (2021). Additionally, civil contempt proceedings can be initiated:

> by motion pursuant to G.S. 5A-23(a1), by the order of a

> judicial official directing the alleged contemnor to appear at a specified reasonable time and show cause why he should not be held in civil contempt, or by the notice of a judicial official that the alleged contemnor will be held in contempt unless he appears at a specified reasonable time and shows cause why he should not be held in contempt. The order or notice must be given at least five days in advance of the hearing unless good cause is shown.

N.C. Gen. Stat. § 5A-23(a) (2021). In the case before us, contempt proceedings were properly initiated against the Defendant with a judicial order to show cause entered May 1, 2020, directing Defendant to appear on August 25, 2020, and show cause why he should not be held in civil contempt for failure to abide by the Custody and Support Order to pay child support and unreimbursed medical expenses, as well as the Equitable Distribution Order for the distributive award payment from the sale of the parties' former marital home.

¶ 18     At the August 25, 2020 hearing, Judge Dunston held Defendant in civil contempt for willfully violating prior orders of the Court by failing to make any child support payments to Plaintiff since January 2016. Defendant's commitment, however, was stayed to give Defendant an opportunity to purge himself of contempt by compliance with the order by 5:00 pm on October 30, 2020. Further, the Contempt Order would be enforced if Defendant failed to meet the purge conditions: "he shall be taken into custody at 12:00 p.m. on November 2, 2020, and shall remain there until he purges himself of contempt by paying $33,198.52," and if he has not met his purge

conditions by October 30, 2020, "an order for arrest shall be issued. No further notice will be provided as Defendant was advised in open court that he is in contempt."

¶ 19 It is within a trial court judge's discretion whether to stay the enforcement of a civil contempt order. *See Guerrier v. Guerrier*, 155 N.C. App. 154, 157, 574 S.E.2d 69, 71 (2002). (Defendant's Commitment to custody for being found in contempt for failure to pay child support and equitable distribution was stayed by the trial court to give Defendant an opportunity to purge himself of contempt by compliance with the order).

¶ 20 Both Rule 59 and Rule 60 Motions were heard by Judge Stevens on April 29, 2021, and Defendant remained in contempt of the Custody and Support Order because he had not paid any amount towards his child support arrears as required by the Contempt Order. Judge Steven's Arrest Order only effectuated the Contempt Order.

¶ 21 The record reflects that Judge Stevens utilized an "Order for Civil Contempt" form to effectuate the enforcement of the Contempt Order. Defendant contends that this action constituted a "new contempt order." We disagree.

¶ 22 We note that after Defendant testified that he was unemployed and had only $9,326.26 to his name, Judge Stevens changed the purge amount under the Arrest Order to $9,300.00. However, this modification does not constitute a new contempt order. *See Cumberland City. ex rel. Mitchell v. Manning*, 262 N.C. App. 383, 386, 822

S.E.2d 305, 307 (2018). Judge Steven's Arrest Order served to enforce Judge Dunston's Contempt Order. In effectuating the Contempt Order, Judge Stevens determined Defendant's present ability to pay and comply, then entered an order reducing the purge amount to afford Defendant the opportunity to comply so he would not be held in custody indeterminately.

¶ 23    Judge Stevens did not err by finding Defendant continued to be in civil contempt or by issuing an Arrest Order because (1) Defendant was given proper notice of his commitment for failure to comply with the Contempt Order by the terms of that order, and (2) Judge Stevens' order served as an enforcement order effectuating the consequences of Defendant's continued contempt.

**B. Willful Violation of the Amended Contempt Order**

¶ 24    Next, Defendant argues since the parties contended the Contempt Order contained errors, his failure to make payments pursuant to the Contempt Order was not willful. We disagree.

¶ 25    "Because civil contempt is based on a willful violation of a lawful court order, a person does not act willfully if compliance is out of his or her power." *Watson*, 187 N.C. App. at 66, 652 S.E.2d at 318 (citations and quotation marks omitted). This Court has explained "[w]illfulness constitutes: (1) an ability to comply with the court order; and (2) a deliberate and intentional failure to do so. Ability to comply has been interpreted as not only the present means to comply, but also the ability to take

reasonable measures to comply." *Id.* (citations and quotation marks omitted). Therefore, "[a] failure to obey an order of a court cannot be punished by contempt proceedings unless the disobedience is wilful [sic], which imports knowledge and a stubborn resistance." *Cox v. Cox*, 10 N.C. App. 476, 477,179 S.E.2d 194, 195 (1971) (citation omitted).

¶ 26    While both parties filed motions to amend the Contempt Order, this fact does not give Defendant legal justification for failing to comply with the Order. As noted by Plaintiff, Rule 60 of the North Carolina Rules of Civil Procedure states that "[a] motion under this section does not affect the finality of a judgment or suspend its operation." N.C. Gen. Stat. § 1A-1, R. 60. Although Plaintiff brought a Rule 60 motion, the operation of the Contempt Order was not suspended. As to Defendant's Rule 59 motion, Rule 62 of the North Carolina Rules of Civil Procedure states,

> "[i]n its discretion and on such conditions for the security of the adverse party as are proper, the court may stay the execution of or any proceedings to enforce a judgment pending the disposition of a motion for a new trial or to alter or amend a judgment made pursuant to Rule 59, or of a motion for relief from a judgment or order made pursuant to Rule 60 . . . ."

N.C. Gen. Stat. § 1A-1, R. 62(b).

¶ 27    However, the record before us does not show Defendant filed a motion to stay the Contempt Order pending a hearing on his Rule 59 motion. Defendant's compliance with the Contempt Order was mandatory, not optional, and pending

motions to modify it did not relieve Defendant of his obligation to comply with it. Defendant chose not to pay anything towards the arrears he owed to Plaintiff, including payment of the $1,800.00 distributive award under the Equitable Distribution Order. Defendant's refusal to pay any amount of arrears owed to Plaintiff is a clear indication of his "stubborn resistance" to the Orders of the trial court.

## C. Defendant's Willful Conduct in Light of Parties' Modification of Custody Agreement

¶ 28      Next, Defendant contends the trial court erred in denying his Rule 59 motion, as the evidence demonstrated that Defendant's non-payment of child support was not willful because the parties had modified their child custody agreement. We disagree.

¶ 29      We first note that a child support order may only be modified by the court following a motion in the pending child support action and a showing of changed circumstances. N.C. Gen. Stat. § 50-13.7(a) (2021). A party seeking to modify the child support order carries the burden of showing a substantial change of circumstances affecting the welfare of the child has occurred since the entry of the previous order. *Ebron v. Ebron*, 40 N.C. App. 270, 252 S.E.2d 235 (1979).

¶ 30      Additionally, a supporting parent possesses "no authority to unilaterally modify the amount of the [court ordered] child support payment. The supporting parent must [first] apply to the trial court for modification." *Chused v. Chused*, 131

N.C. App. 668, 672-73, 508 S.E.2d 559, 562 (1998) (quoting *Craig v. Craig*, 103 N.C. App. 615, 618, 406 S.E.2d 656, 658 (1991)). "If a person unilaterally reduces his court ordered child support payments, he subjects himself to contempt." *Id.*

¶ 31      When one of several children reaches the age of eighteen, we look to our determinations in *Craig v. Craig.* In *Craig,* we held a parent has no authority to unilaterally modify the amount of the child support payment "when one of two or more minor children for whom support is ordered reaches age eighteen, and when the support ordered to be paid is not allocated as to each individual child[] . . . ." 103 N.C. App. 615, 618, 406 S.E.2d 656, 658 (1991).

¶ 32      Here, the record reflects Defendant never requested a modification of the Custody and Support Order. While Defendant testified that he attempted to file a modification to child support in July 2016 and a court hearing was scheduled, his motion, ultimately, was never adjudicated. According to Defendant, the scheduled modification hearing "became moot" once his son moved to Rhode Island to live with him. Defendant made no further effort to modify the child support order. Further, the Custody and Support Order did not allocate the support payment by child or indicate Defendant's child support obligations would recalculate once the elder child reached the age of majority. To the contrary, the order required Defendant to pay monthly child support in the amount of $1,225.87 to Plaintiff until the order was modified or child support automatically terminated because the younger child

reached the age of majority. It was incumbent on Defendant to file a motion to modify child support. *See id.*, 103 N.C. App. at 617-20, 406 S.E.2d at 657-59. In *Massey v. Massey*, this court held "[t]he defendant could easily have taken the question of payments due after his child reached majority to the court for a modification of the order. The defendant had an obligation to observe the order until it was lawfully changed." 71 N.C. App. 753, 757, 323 S.E.2d 451, 454 (1984).

¶ 33        We find Defendant's argument that a modification of child custody indirectly relates to the modification of child support or provides a reasonable excuse for not paying child support unpersuasive. While Defendant contends the parties modified the custody arrangement *on their own*, he offers no evidence in the record before us in support of the parties having agreed to such a modification or of it having been reduced to writing. Notwithstanding the existence of such an agreement, this court has long established, "[i]ndividuals may not modify a court order for child support through extrajudicial written or oral agreements." *Baker v. Showalter*, 151 N.C. App. 546, 551, 566 S.E.2d 172, 175 (2002) (citing *Griffin v. Griffin*, 96 N.C. App. 324, 328, 385 S.E.2d 526, 529 (1989)). Because child support obligations may only be modified by court order, Defendant's argument fails.

¶ 34        However, "[a] failure to obey an order of a court cannot be punished by contempt proceedings unless the disobedience is wilful [sic], which imports knowledge and a stubborn resistance." *Cox*, 10 N.C. App. at 477, 179 S.E.2d at 195

(1971). Here, Defendant would have this court believe his actions were not willful because he ceased making child support payments only after the parties agreed the younger son would reside with him, while overlooking his continued refusal to make his court ordered child support payments once his younger son returned to North Carolina to live with Plaintiff. We do not. Defendant is a seasoned, practicing attorney whose defiance of a court order and failure to follow the proper legal procedures to modify the order from which he seeks relief epitomizes disobedience that is willful, knowing, and stubbornly resistant. *See id.*

Next, Defendant argues his "obligation to make support payments during the two-year period that the younger son resided with him was at least questionable," so his behavior cannot be willful. Defendant cites to *Holden v. Holden*, 214 N.C. App. 100, 715 S.E.2d 201 (2011), for the proposition that a potential contemnor cannot willfully refuse to comply with an ambiguous term in an consent order the contemnor does not understand. We are unpersuaded.

Looking to the plain language of the Custody and Support Order, there is no ambiguity concerning Defendant's payment of child support. The Order is clear that "Defendant shall pay the Plaintiff the sum of one thousand two hundred twenty-five dollars and eighty-seven cents ($1,225.87) in child support" for their two minor children every month. We hold that absent a court ordered modification of the Custody and Support Order, Defendant's failure to pay constituted willful non-

compliance. *See Craig*, 103 N.C. App. at 617–20, 406 S.E.2d at 657–59; *see also Sharpe v. Nobles*, 127 N.C. App. 705, 709, 493 S.E.2d 288, 290–91 (1997).

**D. Plaintiff's Rule 60 motion**

¶ 37    Next, Defendant argues Plaintiff's Rule 60 motion should have been denied because the trial court's miscalculations as to the Contempt Order purge amount constituted more than a mere "clerical error." We disagree.

¶ 38    Pursuant to N.C. Gen. Stat. § 1A-1, R. 60, a judge is permitted to correct "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission . . . on his own initiative or on the motion of any party and after such notice, if any, as the judge orders." N.C. Gen. Stat. § 1A-1, R. 60. Relief under Rule 60(a) is limited to the "correction of clerical errors, [and] . . . it does not permit the correction of serious or substantial errors." *Buncombe Cty. By and Through Child Support Enf't Agency ex rel. Andres v. Newburn*, 111 N.C. App. 822, 825, 433 S.E.2d 782, 784 (1993) (citation omitted). "A trial court's order correcting a clerical error under Rule 60(a) is subject to the abuse of discretion standard." *In re Estate of Meetze*, 272 N.C. App. 475, 479, 847 S.E.2d 220, 224 (2020). Accordingly, a trial court abuses its discretion and enters an order that is substantive and outside the scope of Rule 60(a) when it "alter[s] the effect of the [original] order." *Howard Schultz & Assocs. v. Ingram*, 38 N.C. App. 422, 427, 248 S.E.2d 345, 349 (1978).

¶ 39        In the present case, the clear intent of the Contempt Order was to hold Defendant in civil contempt for failure to pay child support, unreimbursed medical expenses, and the distributive award payment owed to Plaintiff. The record reflects that Judge Dunston, in determining the purge amount for the Contempt Order, determined it would be equitable for child support to be calculated based upon the actual custody schedule the parties followed during the respective time periods. The Contempt Order detailed that the calculation of the purge amount would be based upon the "[m]onthly child support pursuant to Worksheet A of the 2019 North Carolina Child Support Guidelines for one child for the period of January 2019 through August of 2020, of $971.29 for eight (8) months, in the total amount of $1,942.58.[2]

¶ 40        Based on the language in the Contempt Order, the clear intent of the Order was for Defendant to receive a credit towards his purge amount based upon the specified twenty-month period from January 2019 to August of 2020, the result of which is a reduction in his purge amount. However, the Contempt Order contained clear typographical errors, as the duration of the period identified by the trial court was a twenty-month period, not an eight-month period as stated in the Order.

---

[2] Again, we note that this formula is a miscalculation of the amount Defendant would have owed for payment of eight months of child support at a monthly amount of $971.29. This calculation comes to $7,770.32, not $1,942.58.

Additionally, the modified child support payment of $971.29 per month for twenty months should have been written as "$19,425.80" rather than "$1,942.58." In other words, the calculation was off by one decimal place.

¶ 41      Notwithstanding, Judge Dunston articulated her reasoning and logic for the recalculation. In *Gordon v. Gordon*, this Court affirmed the trial court's correction to an alimony order which originally required plaintiff ex-husband to continue making monthly payments to defendant ex-wife through and including March 1994, at which time she would have turned 62. 119 N.C. App. 316, 317-19, 458 S.E.2d 505, 505-06 (1995). The wife would not have turned 62, however, until March 1995. *Id.* This court held a date miscalculation notwithstanding, the clear intent of the order was that plaintiff would play alimony to defendant until she reached age sixty-two. *Id.* at 317-18, 458 S.E.2d at 506.

¶ 42      Here, it is clear Judge Dunston intended to calculate the purge amount based on the parties' custody schedule between the period of January 2019 to August 2020, so as to reflect the period of time before the younger son turned eighteen years old. Judge Stevens' Order granting Plaintiff's Rule 60 motion notes the corrected amounts, which increased Defendant's purge amount to $48,881.74. Based upon the clear intent of the order for Defendant to be given in equity a certain amount of "credit", we do not believe that Judge Stevens' later clerical correction altered the effect of the original Contempt Order: regardless of the amount of purge "credit" to

which Defendant was entitled, he was required to pay the total amount of child support arrearages accrued since January 2016. We hold there was no abuse of discretion by Judge Stevens' granting Plaintiff's Rule 60(a) motion to correct the clerical errors in the Contempt Order.

## E. Denial of Defendant's Rule 59 motion

¶ 43    Next, Defendant contends Judge Stevens erred in denying his Rule 59 motion. Under a Rule 59 motion, "an appellate court's review of a trial judge's discretionary ruling either granting or denying a motion to set aside a verdict and order a new trial is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion . . . ." *Worthington v. Bynum*, 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982).

### 1. *Modification of child support*

¶ 44    First, Defendant contends the trial court should have granted his Rule 59 motion because the parties modified child support based on an alleged split custody agreement between the parties. Defendant argues that when the parties "agreed to change the custody arrangement, they implicitly agreed to modify the support obligation." Defendant argues that Judge Stevens erred in dismissing the Rule 59 motion because the Contempt Order should have modified the child support obligations based upon this alleged mutual child custody agreement. We disagree.

¶ 45    Again, we note that this alleged custody agreement does not appear anywhere

in the record. It is well settled that our review is limited to those items contained in the record. N.C. R. App. P. Art. II, Rule 9(a). We reiterate: to modify a child support order or a child custody order, a judicial modification by *a court* is required and "[i]ndividuals may not modify a court order for child support through extrajudicial written or oral agreements." *Baker*, 151 N.C. App. at 551, 566 S.E.2d at 175 (citing *Griffin*, 96 N.C. App. at 328, 385 S.E.2d at 529); N.C. Gen. Stat. § 50-13.7(a). It is well settled,

> [N]o agreement or contract between husband and wife will serve to deprive the courts of their inherent as well as their statutory authority to protect the interests and provide for the welfare of infants. They may bind themselves by a separation agreement or by a consent judgment, but they cannot thus withdraw children of the marriage from the protective custody of the court.

*Griffin*, 96 N.C. App. at 328, 385 S.E.2d at 529 (citation omitted). Any extrajudicial written agreement between the parties intended to modify the court ordered custody arrangement is invalid and does not implicitly or otherwise modify the parties' court ordered child support obligations. Simply put, the parties do not possess the authority to modify a child custody and support order without court intervention.

¶ 46 Additionally, our statute generally prohibits a North Carolina court from modifying, reducing, or vacating vested child support arrearages that have accrued under a valid child support order issued by a North Carolina court or any other court. N.C. Gen. Stat. § 50-13.10(a) (2021). Our State Supreme Court has held that this

general rule prohibits a retroactive modification to past due child support; that is, any modification that affects payments due before the motion for modification was filed in a court. *See Hill v. Hill*, 335 N.C. 140, 145, 435 S.E.2d 766, 768 (1993).

¶ 47        Here, the trial court did not possess the authority to retroactively modify Defendant's vested child support arrearages in the Custody and Support Order. Therefore, Judge Stevens did not err in denying Defendant's Rule 59 motion.

### 2. *Evidence of Defendant's inability to pay*

¶ 48        Next, Defendant contends his Rule 59 motion should have been granted by Judge Stevens because there was insufficient evidence of his ability to pay child support during the relevant period and to pay the purge amounts. Defendant argues he should not have been found in contempt and should not have been arrested pursuant to Judge Stevens' Arrest Order. We disagree.

¶ 49        As discussed *supra*, a defendant's failure to comply with a court order is a continuing civil contempt as long as the trial court finds that: (1) the order remains in force; (2) the order's purpose may still be served by compliance; (3) the noncompliance was willful; and (4) the noncomplying party is able to comply with the order or is able to take reasonable measures to comply. N.C. Gen. Stat. § 5A-21(a). "[I]f a judicial official enters an order to show cause or a notice of contempt, the burden shifts to the alleged contemnor to prove that he or she was not in wilful [sic] contempt of the court's prior order." *Trivette v. Trivette*, 162 N.C. App. 55, 60, 590

S.E.2d 298, 303 (2004) (citing *Plott v. Plott*, 74 N.C. App. 82, 85, 327 S.E.2d 273, 275 (1985)). In a civil contempt hearing, "the defendant has the burden of presenting evidence to show that he was not in contempt and the defendant refuses to present such evidence at his own peril." *Hartsell v. Hartsell*, 99 N.C. App. 380, 387, 393 S.E.2d 570, 575 (1991). While explicit findings are preferable in a civil contempt proceeding to enforce an order for child support, "they are not absolutely essential where the findings otherwise clearly indicate that a contempt order is warranted." *Plott*, 74 N.C. App. at 85, 327 S.E.2d at 275. "[T]his Court has held that a general finding of present ability to comply is sufficient basis for the conclusion of wilfulness [sic] necessary to support a judgment of civil contempt." *Hartsell*, 99 N.C. App. at 385, 393 S.E.2d at 574 (citation omitted).

¶ 50     In the present case, because a judicial official found probable cause existed to issue a show cause order to Defendant, Defendant bore the burden to demonstrate why he should not have been held in willful contempt. *State v. Coleman*, 188 N.C. App. 144, 149–50, 655 S.E.2d 450, 453 (2008). Defendant did not proffer evidence during the contempt hearing to show why he should not have been held in contempt.

¶ 51     Plaintiff testified at the contempt hearing before Judge Dunston that Defendant possessed the ability to pay child support, as he is "the head of civil litigation as a trial attorney with Orabona Law Offices in Providence, Rhode Island" and that his picture appears on the law firm's website as having tried over a hundred

jury trials to verdict with a documented 85% success rate. Plaintiff testified that Defendant took this job with Orabona Law "for a substantial pay increase," and that his income exceeded $100,000.00 per year. Plaintiff also testified that Defendant possesses income and assets in an amount sufficient to pay all arrearage amounts owed to her. The evidence in the record tends to show that as of the date of the contempt hearing, Defendant had last made a partial child support payment to Plaintiff in the amount of $141.00 in January 2016.

¶ 52    Defendant offered no rebuttal evidence, chose not to call witnesses to testify on his behalf, and did not proffer alternative explanations for his income or deny his ability to pay the full amounts of arrearages owed. Defendant did not testify that he paid Plaintiff any amount of money since the Custody and Support Order was entered and did not provide any receipts or documentation of payments made to Plaintiff since the Custody and Support Order. In short, Defendant did not dispute Plaintiff's testimony about his ability to pay.

¶ 53    Although the Contempt Order did not contain detailed findings regarding Defendant's expenses or a detailed inventory of his financial condition, his testimony provided sufficient evidence of his present ability to comply with the Order and the purge condition. Therefore, the trial court did not abuse its discretion when it denied Defendant's Rule 59 motion. The court's general finding of Defendant's present ability to comply served as a sufficient basis for the conclusion of willfulness.

### 3. *Imposition of legal fees*

¶ 54      Defendant argues the trial court erred in denying his Rule 59 motion as to the imposition of legal fees, and in his brief asserts "attorney [sic] fees may not be taxed in a contempt action." Defendant's argument is without merit. The case cited by Defendant for his claim explains: "The Court acknowledged that attorneys' fees had been awarded in limited types of civil contempt actions; specifically, those involving child support and equitable distribution." *Baxley v. Jackson*, 179 N.C. App. 635, 640, 634 S.E.2d 905, 908 (2006) (citations omitted). Pursuant to N.C. Gen. Stat. § 50-13.6, in an action or proceeding for child support, "the court may in its discretion order payment of reasonable attorney's fees to an interested party acting in good faith who has insufficient means to defray the expense of the suit." N.C. Gen. Stat. § 50-13.6. (2021). Attorneys' fees may be awarded, without the finding required by N.C. Gen. Stat. § 50-13.6, when the contempt is to enforce an equitable distribution order. *Hartsell*, 99 N.C. App. at 389–90, 393 S.E.2d at 576–77.

¶ 55      Here, the trial court did not abuse its discretion in awarding Plaintiff's attorney's fees in the contempt matter for the non-payment of child support *and* for the non-payment of the amounts due under the Equitable Distribution Order. The trial court found Plaintiff acted in good faith in bringing this contempt action, would not have had to bring forth a motion for contempt but for Defendant's conduct, possessed insufficient means to defray the expenses of this action, and was entitled

to an award of attorney's fees from Defendant. As such, we conclude the trial court did not err by denying Defendant's Rule 59 motion regarding the award of Plaintiff's attorney's fees.

### 4. *Medical Expenses*

¶ 56 Lastly, Defendant argues the trial court erred in ordering he reimburse Plaintiff $5,871.50 for his share of unreimbursed medical expenses. Defendant argues the unreimbursed expenses mainly consisted of cosmetic dental work, which was neither reasonable nor medically necessary. We disagree.

¶ 57 Defendant cites *Billings v. Billings*, in which we held that defendant parent presented substantial evidence that her child's orthodontic treatment for braces was reasonable and medically necessary, and thereby, fell under the medical expenses category in a child support order. 164 N.C. App. 598, 596 S.E.2d 474, 2004 N.C. App. LEXIS 1093 (2004) (unpublished). Before we address the merits of Defendant's argument, we note his reliance on an unpublished opinion. "Citation to unpublished authority is expressly disfavored by our appellate rules but permitted if a party, in pertinent part, 'believes . . . there is no published opinion that would serve as well' as the unpublished opinion." *State ex rel. Moore Cty. Bd. of Educ. v. Pelletier*, 168 N.C. App. 218, 222, 606 S.E.2d 907, 909 (2005) (quoting N.C. R. App. 30(e)(3)). Unpublished opinions are not controlling authority. Nonetheless, we find its reasoning persuasive, and we adopt it hereby.

¶ 58        Here, the record contains substantial evidence that the children's orthodontic treatments were reasonable and medically necessary and not merely cosmetic procedures. The evidence tends to show Dr. Khara, of Khara Orthodontics, determined the elder son had a significantly deep overbite and severe overjet with palatal impingement that could cause the child to "loose [sic] upper teeth sooner." Additionally, Dr. Khara expressed significant concerns about the child's airway. Medical notes in the record detailed that the elder son's airway is so narrow, it is "off the chart 'black in color' . . . [and] this may effect [sic] [the child] medically in [the] future." Dr. Khara's treatment plan recommended a Herbst appliance followed by braces to address these concerns, because it would help the child's airway, as well as improve his profile by bringing his lower jaw forward. Such medical treatments, particularly orthodontic appointments and treatment plans, constitute medically necessary procedures. *Billings*, 2004 N.C. App. LEXIS 1093 at *5. Treatments related to the prevention of tooth loss, or the expansion of the airway are undertaken for the good of the child's health, rather than merely cosmetic purposes. Based on the evidence in the record, these medical appointments and procedures were reasonable, medically necessary, and qualify as medical expenses Defendant is obligated to pay. We hold that the trial court did not abuse its discretion in denying Defendant's Rule 59 motion as to the medical expenses.

### III.    Conclusion

¶ 59    For the foregoing reasons, we hold the trial court properly effectuated a prior Contempt Order by issuing an Arrest Order for Defendant. We also hold the trial court did not abuse its discretion by denying Defendant's Rule 59 motion and affirming Plaintiff's Rule 60 motion. Accordingly, we affirm.

AFFIRMED.

Judges DILLON and HAMPSON concur.