IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-516

Filed 18 June 2025

Carteret County, No. 21 CVD 135

LISA M. COLLINS, Plaintiff,

v.

COREY T. HOLLEY, Defendant.

Appeal by Plaintiff from Order entered 29 August 2023 by Judge W. David McFadyen, III, in Carteret County District Court. Heard in the Court of Appeals 30 January 2025.

> *Miller & Audino, LLP, by Jay Anthony Audino, for Plaintiff-Appellant.*
>
> *Schulz Stephenson Law, by Sundee G. Stephenson and Bradley N. Schulz, for Defendant-Appellee.*

HAMPSON, Judge.

## **Factual and Procedural Background**

Lisa M. Collins (Plaintiff) appeals from an Order finding her in contempt and granting Corey T. Holley's (Defendant) Motion to Increase Attorney's Fees, Motion to Increase Arrears, and Motion to Order Plaintiff Incarcerated. The Record before us tends to reflect the following:

The parties are parents of one minor child. On 16 February 2021, Plaintiff initiated this proceeding by filing a Complaint for child custody and child support in

Carteret County District Court. A Temporary Child Custody Order was entered with the consent of the parties on or about 9 March 2021. That Order granted the parties joint legal custody and awarded Plaintiff primary physical custody, while Defendant had visitation. The trial court entered a permanent Custody Order on 5 April 2022, which maintained the parties' joint legal custody but awarded Defendant primary physical custody of the minor child and granted Plaintiff visitation.

Defendant filed a Motion seeking attorney fees on 22 September 2022. The trial court heard arguments on Defendant's Motion, temporary child support, and "arrears"[1] on 22 May 2023. At that hearing, Defendant requested $48,866.92 in attorney fees. The trial court entered an Attorney Fees Order on 19 July 2023 determining the appropriate amount of attorney fees was $30,000.00. The trial court ordered Plaintiff to pay $2,500.00 per month toward the total award amount on the first day of each month beginning 1 August 2023 until the award was paid in full.

The same day, 19 July 2023, the trial court entered an Order on Temporary

---

[1] The trial court repeatedly identifies certain amount as "arrears." However, this award is properly considered past-prospective child support. Arrears are past-due child support payments that have already been ordered and are vested as they accrue. *See* N.C. Gen. Stat. § 50-13.10 (2023). In contrast, past-prospective child support is child support that is ordered for the time period between the filing of a claim for child support and entry of an order for child support. *Miller v. Miller*, 153 N.C. App. 40, 48, 568 S.E.2d 914, 919 (2002) ("[O]ur court has previously held that child support which is awarded from the time a party files a complaint for child support to the date of trial is not retroactive child support, but is in the nature of prospective child support representing that period from the time a complaint seeking child support is filed to the date of trial." (citation and quotation marks omitted)). Here, the "arrears" identified by the trial court had not previously been ordered and were unpaid; rather, they were newly established child support obligations for the time period prior to the child support hearing through entry of the Child Support Order. Accordingly, what the trial court refers to as "arrears" we refer to as past-prospective child support in this opinion.

Child Support; Arrears (Child Support Order). In the Child Support Order, the trial court determined the parties' respective monthly gross incomes and health insurance expenses for the minor child. Specifically, the trial court found Plaintiff's monthly gross income was $5,739.07. The trial court calculated Plaintiff's child support obligation using our Child Support Guidelines, which set a monthly child support payment of $795.00. The trial court also determined Plaintiff owed Defendant $6,447.34 in past-prospective child support based on a monthly payment of $882.34 for November 2022 through May 2023. However, the trial court ordered Plaintiff pay only $3,500.00 in past-prospective child support according to the following schedule: $1,000.00 on 1 July 2023, 1 October 2023, and 1 January 2024; and $500.00 on 1 April 2024.

Defendant filed his first Contempt Motion on 25 July 2023. Defendant alleged Plaintiff had paid a total of $1,800.00 in child support in June and July 2023 but owed $790.00 for that time period. Defendant filed a second Contempt Motion on 8 August 2023, alleging Plaintiff had failed to pay the first attorney fee payment of $2,500.00. The trial court held a hearing on Defendant's Contempt Motions on 24 August 2023. At the time of the hearing, Plaintiff had paid her outstanding child support and was current on her child support obligations; however, she had not paid any of the attorney fee payment.

At the hearing, Defendant's case-in-chief was exclusively Plaintiff's testimony. Defendant did not testify nor offer other evidence. Plaintiff testified she earned

approximately $1,800.00 every two weeks and had less than $100.00 per month remaining for her own expenses after fulfilling her court-ordered child support payments. Plaintiff stated she lived with her grandmother and did not have a mortgage nor any kind of rental agreement. When asked about her credit score, Plaintiff responded, "I am not sure." She further testified she had not applied for any loan to pay the attorney fee award because she "would have to get a co-signer" to obtain a loan for the full amount of $30,000.00. Plaintiff testified her current, recurring monthly expenses included: $150.00 for electricity, $40.00 for water, $180.00 for Spectrum services, $600.00 for a personal loan payment, $105.00 for car insurance, $68.00 for cell phone service, $442.00 for credit card payments, at $120.00 for therapy. Plaintiff declined to present evidence.

The day of the hearing, Defendant filed a Motion to Increase Attorney Fees Award and a Motion seeking to have Plaintiff incarcerated. Defendant requested the trial court increase the attorney fee award from $30,000.00 to $50,163.06 and to increase the past-prospective child support award from $3,500.00 to $6,447.34.

The trial court entered its Contempt Order on 29 August 2023. In that Order, the trial court found Plaintiff in contempt of the Attorney Fees Order for her failure to satisfy the $2,500.00 payment. The trial court further found "Plaintiff's actions were willful and intentional. The Plaintiff has an ability to comply with the terms of the July 19, 2023 Order, and she has willfully disobeyed the Orders of this Court." In the Contempt Order, the trial court granted Defendant's Motion to Increase Attorney

Fees Award, Motion to Increase the Arrears (Past-Prospective Child Support), and Motion to Order Plaintiff Incarcerated. To purge her contempt, the trial court ordered Plaintiff pay $51,600.00 in three installments of $17,200.00 each on 15 October, 15 November, and 15 December 2023, and to pay $6,000.00 in past-prospective child support in six installments of $1,000.00 per month beginning 1 September 2023. The trial court also provided, "If Plaintiff fails to make any payment as scheduled, on the date so scheduled, Plaintiff shall be arrested and held in the Carteret County Jail until payment in full is made." Plaintiff timely filed Notice of Appeal on 26 September 2023.

## Issues

The issues on appeal are whether the trial court erred by: (I) making Findings of Fact unsupported by competent evidence; (II) concluding Plaintiff was in contempt of the Attorney Fee Order; (III) ordering Plaintiff to pay additional attorney fees and past-prospective child support; (IV) entering its purge conditions; and (V) ordering Plaintiff's automatic incarceration if she failed to comply with future payments.

## Analysis

I.    Findings of Fact

"We review a trial court's determination of civil contempt to determine 'whether there is competent evidence to support the findings of fact and whether the findings support the conclusions of law.'" *Deanes v. Deanes*, 269 N.C. App. 151, 162, 837 S.E.2d 404, 412 (2020) (quoting *Watson v. Watson*, 187 N.C. App. 55, 64, 652

S.E.2d 310, 317 (2007) (citation omitted)). "When the trial court fails to make sufficient findings of fact and conclusions of law in its contempt order, reversal is proper." *Thompson v. Thompson*, 223 N.C. App. 515, 518, 735 S.E.2d 214, 216 (2012) (citation omitted). Here, Plaintiff challenges the trial court's Findings 5, 12, 14, and 15 as not supported by competent evidence presented at trial.

Plaintiff contends the following portion of Finding 5 is not supported by competent evidence: "Defendant detailed that Plaintiff had not made a single child support payment or arrears payment on time. All payments had been late." The only evidence elicited during the contempt hearing regarding Plaintiff's child support payments was the following exchange with Plaintiff:

> [Attorney]: Are you current on your child support?
>
> [Plaintiff]: Yes.

Although Defendant alleged Plaintiff's child support payments were late in his first Contempt Motion, that Motion was not introduced into evidence nor did Defendant request the trial court take judicial notice of that Motion. In the absence of additional evidence beyond Plaintiff's statement above, the challenged portion of Finding of Fact 5 was not supported by the evidence.

Plaintiff challenges Finding 12, which states: "The Plaintiff's actions were willful and intentional. The Plaintiff has an ability to comply with the terms of the July 19, 2023 Order, and she has willfully disobeyed the Orders of this Court. The Plaintiff's actions have defeated, impaired, impeded, and prejudiced the rights and

remedies of the Defendant." Our caselaw consistently defines "willfulness" as "(1) an ability to comply with the court order; and (2) a deliberate and intentional failure to do so." *Sowers v. Toliver*, 150 N.C. App. 114, 118, 562 S.E.2d 593, 596 (2002) (citation omitted). Thus, to establish willfulness, Defendant had to show Plaintiff had the ability to comply with Attorney Fees Order.

At the contempt hearing, Plaintiff testified she earned approximately $3,600.00 per month. She also testified her regular recurring monthly expenses were $1,705.00 and she also paid monthly prospective child support of $795.00 and needed $250.00 per month to go toward past-prospective child support payments of $1,000.00 due every four months. Those expenses alone leave Plaintiff with approximately $850.00—significantly less than the monthly attorney fee payment she owed of $2,500. Thus, the evidence showed Plaintiff did not have the ability to pay the monthly attorney fee award.

Although perhaps Plaintiff could have obtained a loan to satisfy the attorney fee award, *see Watson*, 187 N.C. App. at 66, 652 S.E.2d at 318 ("Ability to comply has been interpreted as not only the present means to comply, but also the ability to take reasonable measures to comply." (citation omitted)), there was not sufficient evidence adduced at trial to show this is the case. The only evidence presented on this issue showed Plaintiff did not know what her credit score was, and she had not applied for a loan because she believed she would need a co-signer given the amount needed. In *Henderson v. Henderson*, our Supreme Court affirmed this Court's vacatur of a civil

contempt order where "[n]o evidence was adduced at the hearing with respect to any assets or liabilities of the defendant, any inventory of his property, his present ability to work, nor even his present salary." 307 N.C. 401, 409, 298 S.E.2d 345, 351 (1983). Similarly, in the present case, there was no evidence produced at the hearing regarding Plaintiff's assets. Indeed, even more compellingly, the evidence revealed only liabilities and a present salary that is not sufficient to cover all of her expenses and court-ordered payments. Thus, Finding 12 is unsupported by the evidence.

Plaintiff challenges Finding 14, which states: "Defendant is an interested party acting in good faith who has insufficient means to defray the expense of this action, including but not limited to his reasonable attorney fees. Defendant is in need of an award of reasonable attorney's fees. Plaintiff has the ability to pay these attorney fees." At the contempt hearing, Defendant presented no evidence whatsoever as to his own financial status. In the absence of any evidence as to Defendant's finances, the trial court erred in finding he has insufficient means to defray his attorney fees. Further, as we discussed in addressing Finding 12, there was insufficient evidence to show Plaintiff had the ability to satisfy all of her current financial obligations at the time of the hearing; thus, the trial court had no basis on which to find Plaintiff had the ability to pay even more attorney fees. Accordingly, Finding 14 is erroneous.

Finally, Plaintiff challenges Finding 15: "Grounds also exist to warrant modification of the Court's prior Orders as more specifically detailed below." Although labeled a finding of fact, whether grounds exist to warrant modification

requires the trial court to weigh and judge the evidence. Thus, it is properly considered a conclusion of law. *See In re K.J.M.*, 288 N.C. App. 332, 339, 886 S.E.2d 589, 595 (2023) ("Any determination requiring the exercise of judgment or the application of legal principles is more properly classified as a conclusion of law." (quoting *In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997)) (internal citations omitted))*; see also In re Estate of Sharpe*, 258 N.C. App. 601, 605, 814 S.E.2d 595, 598 (2018) ("The labels 'findings of fact' and 'conclusions of law' employed by the lower tribunal in a written order do not determine the nature of our standard of review. If the lower tribunal labels as a finding of fact what is in substance a conclusion of law, we review that 'finding' as a conclusion *de novo*." (internal citation omitted)). We review it as such below.

But in any event, this statement reflects a fundamental misunderstanding and misuse of contempt. Civil contempt is an enforcement mechanism used to "compel obedience" to court orders. *Hardy v. Hardy*, 270 N.C. App. 687, 690, 842 S.E.2d 148, 151 (2020) (citation omitted). It is not a substitute for procedures to modify an underlying court order. *See generally Jackson v. Jackson*, 192 N.C. App. 455, 459, 665 S.E.2d 545, 548 (2008) (discussing confusion between contempt and modification of an order in the context of child custody).

Reviewing the Record and transcripts, the challenged Findings of Fact are unsupported by the evidence. "[W]hen an appellate court determines that a finding of fact is not supported by sufficient evidence, the court must disregard that finding

and examine whether the remaining findings support the trial court's conclusions of law." *In re A.J.*, 386 N.C. 409, 410, 904 S.E.2d 707, 710 (2024) (citing *In re A.J.L.H.*, 384 N.C. 45, 52, 884 S.E.2d 687, 693 (2023)). Accordingly, we disregard the above Findings and consider whether the remaining Findings support the trial court's Conclusions.

II.   Contempt and Willfulness

Plaintiff contends the trial court erred in concluding she was in willful violation and contempt of the Attorney Fee Order. Specifically, she argues the Findings of Fact do not support the Conclusion she "has willfully and intentionally violated the Orders of the Court issued on July 19, 2023."

In civil contempt proceedings, our review is limited to "determining whether competent evidence supports the findings of fact and whether those findings support the conclusions of law." *Blanchard v. Blanchard*, 279 N.C. App. 280, 284, 865 S.E.2d 693, 697 (2021) (citing *Sharpe v. Nobles*, 127 N.C. App. 705, 709, 493 S.E.2d 288, 291 (1997)). If the findings are supported by competent evidence, they are conclusive on appeal. *Hartsell v. Hartsell*, 99 N.C. App. 380, 385, 393 S.E.2d 570, 573 (1990) (citing *Mauney v. Mauney*, 268 N.C. 254, 257, 150 S.E.2d 391, 394 (1966)).

Under our statutes, failure to comply with a court order is continuing civil contempt so long as

(1) The order remains in force;

(2) The purpose of the order may still be served by compliance

- 10 -

with the order;

(2a) The noncompliance by the person to whom the order is directed is willful; and

(3) The person to whom the order is directed is able to comply with the order or is able to take reasonable measures that would enable the person to comply with the order.

N.C. Gen. Stat. § 5A-21(a)(1)-(3) (2023).

"Because civil contempt is based on a willful violation of a lawful court order, a person does not act willfully if compliance is out of his or her power." *Watson*, 187 N.C. App. at 66, 652 S.E.2d at 318 (citing *Henderson*, 307 N.C. at 408, 298 S.E.2d at 350). "Willfulness constitutes: (1) an ability to comply with the court order; and (2) a deliberate and intentional failure to do so." *Sowers*, 150 N.C. App. at 118, 562 S.E.2d at 596 (citation omitted). Ability to comply may mean the present means to comply or the ability to take reasonable measures to comply. *Watson*, 187 N.C. App. at 66, 652 S.E.2d at 318 (citing *Teachey v. Teachey*, 46 N.C. App. 332, 334, 264 S.E.2d 786, 787 (1980)).

Here, Plaintiff testified about her finances at the contempt hearing. Plaintiff reported earning approximately $3,600.00 per month, and she testified to her recurring personal expenses, prospective child support, and past-prospective child support, which totaled $2,750.00. Her remaining attorney fee obligation under the Attorney Fee Order is $2,500.00. She also explained she resided with her grandmother and was not listed on any lease or rental agreement. There was no

other evidence presented at the hearing as to Plaintiff's finances. Based on this evidence, the trial court concluded Plaintiff was in willful violation of the Attorney Fee Order.

At the conclusion of a contempt hearing, the trial court "must enter a finding for or against the alleged contemnor on *each of the elements* set out in G.S. 5A-21(a)." N.C. Gen. Stat. § 5A-23(e) (2023) (emphasis added). The Contempt Order in this case does not contain any Finding that the Attorney Fee Order remains in force, nor does it contain a Finding stating the purpose of the Attorney Fee Order may still be served by compliance with that Order. Thus, as to the Attorney Fee Order, the trial court's Findings of Fact do not support its Conclusion that Plaintiff was in contempt of the Order.

Further, as we have explained, the Findings regarding Plaintiff's ability to pay were not supported by the evidence presented. The only evidence presented at trial showed Plaintiff had $100.00 per month left over after expenses and she did not believe she could obtain a loan without a co-signer. There was no basis upon which to conclude Plaintiff had the ability to pay $2,500.00 in attorney fees to comply with the Attorney Fee Order. Without the ability to comply with an order, a party cannot be held in contempt of that order. *See Sowers*, 150 N.C. App. at 118, 562 S.E.2d at 596 (citation omitted). Thus, the trial court's Findings of Fact are insufficient to support its Conclusion Plaintiff was in contempt of the Attorney Fee Order. Therefore, the trial court erred in holding Plaintiff in contempt.

III.    Attorney Fees and Past-Prospective Child Support

Plaintiff argues the trial court erred in ordering her to pay additional attorney fees for which the court previously found her not responsible and ordering her to pay increased past-prospective child support. We agree.

"Criminal contempt is generally applied where the judgment is in punishment of an act already accomplished, tending to interfere with the administration of justice. Civil contempt is a term applied where the proceeding is had to preserve the rights of private parties and to compel obedience to orders and decrees made for the benefit of such parties." *Hardy*, 270 N.C. App. at 690, 842 S.E.2d at 151 (quoting *O'Briant v. O'Briant*, 313 N.C. 432, 434, 329 S.E.2d 370, 372 (1985)). "A major factor in determining whether contempt is civil or criminal is *the purpose for which the power is exercised*. Where the punishment is to preserve the court's authority and to punish disobedience of its orders, it is criminal contempt. Where the purpose is to provide a remedy for an injured suitor and to coerce compliance with an order, the contempt is civil." *O'Briant*, 313 N.C. at 434, 329 S.E.2d at 372 (emphasis added).

This Court has previously concluded a trial court acted erroneously by using a civil contempt order to punish or amend a prior court order. *See Jackson*, 192 N.C. App. at 464, 665 S.E.2d at 551 (concluding provisions in contempt order impermissibly modified a prior child custody order); *Parker v. McCoy*, 291 N.C. App. 693, 895 S.E.2d 481, 2023 WL 8746469 (2023) (unpublished) (trial court erred in suspending existing permanent custody order and entering new custodial provisions

within a contempt order).

In *Jackson*, although neither party had a pending motion to modify the underlying custody order, the trial court entered a contempt order which modified a provision of the existing custody order and imposed several new custody provisions. 192 N.C. App. at 460, 665 S.E.2d at 549. The trial court later amended the contempt order to make several additional findings and conclusions regarding child custody and recaptioned it "Order Modifying Custody Order and for Contempt, and for the Appointment of a Parenting Coordinator." *Id.* at 462, 665 S.E.2d at 550. Although in the child custody context, this Court noted the distinction between "the purposes of modification and contempt" and concluded the trial court abused its discretion by modifying the prior custody order via contempt. *Id.* at 463-64, 665 S.E.2d at 551. In *Parker*, this Court looked to *Jackson* and concluded the trial court had erred by suspending the underlying permanent custody order and entering a temporary order with new custodial provisions within its contempt order. 291 N.C. App. at *3.

The consistent teaching of these cases is that civil contempt may not be used to modify a prior court order. This is precisely what occurred in the case *sub judice*. Here, the Attorney Fee Order mandated Plaintiff pay $30,000.00 in attorney fees. However, the trial court later increased this amount to $51,600.00 in the Contempt Order. In doing so, the trial court impermissibly modified its prior Order. *See Jackson*, 192 N.C. App. at 464, 665 S.E.2d at 551. Moreover, increasing the amount of attorney fees Plaintiff is required to pay is clearly unrelated to coercing her to pay

the attorney fees previously awarded and, thus, is impermissible. *See Hardy*, 270 N.C. App. at 690, 842 S.E.2d at 151 (civil contempt is a mechanism "to compel obedience to orders and decrees made for the benefit of such parties.").

Likewise, the trial court's use of contempt to grant Defendant's Motion to Increase Arrears is erroneous. In the Child Support Order, the trial court "adjudicate[d] the arrears at $3,500.00[.]" Thus, the trial court had already determined the amount of past-prospective child support. As with the attorney fees, contempt is not a proper mechanism to modify an award of past-prospective child support. *See Jackson*, 192 N.C. App. at 464, 665 S.E.2d at 551. Nor is increasing the amount of past-prospective child support Plaintiff owes related to coercing her to pay the ordered amount. *See Hardy*, 270 N.C. App. at 690, 842 S.E.2d at 151.[2] Thus, the trial court lacked authority to modify the past-prospective child support award and the attorney fee award.

IV.     Purge Conditions

Plaintiff contends the purge conditions set out in the Contempt Order were

_____

[2] Even if we were to accept Defendant's characterization of the underlying amount as "arrears," this modification would be erroneous. Under our statutes, "Each past due child support payment is vested when it accrues and may not thereafter be vacated, reduced, *or otherwise modified in any way* for any reason . . . except that a child support obligation may be modified as otherwise provided by law" subject to the requirements set out in that statute. N.C. Gen. Stat. § 50-13.10(a) (2023) (emphasis added). Indeed, this Court has recognized "[c]hild support cannot generally be retroactively increased back to date before the filing of a motion to increase child support." *Crenshaw v. Crenshaw*, 296 N.C. App. 1, 18, 907 S.E.2d 743, 753 (2024). Here, Defendant made no argument, either before the trial court or in briefing to this Court, that modification of the "arrears" was warranted under N.C. Gen. Stat. § 50-13.10(a) or that Defendant had satisfied the statutory requirements under that Section. Thus, Defendant has not established this modification was warranted under any view of the amount.

improper. We agree.

The trial court set out the conditions Plaintiff must satisfy to purge herself of the contempt as follows:

a. Plaintiff shall pay attorney's fees to Defendant in the amount of $51,600.00, payable under the following schedule:

    i.      $17,200.00 payable on or before October 15, 2023.

    ii.     $17,200.00 payable on or before November 15, 2023.

    iii.    $17,200.00 payable on or before December 15, 2023.

b. Plaintiff shall pay child support arrears in the amount of $6,000.00, payable at $1,000.00/month until satisfied. This is in addition to what Plaintiff has paid in arrears to date. The first arrears payment of $1,000.00 shall be paid on or before September 1, 2023.

Plaintiff specifically argues the trial court failed to determine whether she had the ability to satisfy the purge conditions and the purge conditions impermissibly escalated her financial obligations beyond what was previously ordered. We address each argument in turn.

A.    *Ability to Satisfy Purge Conditions*

"[T]he trial court must find that [the obligor] has the ability to *fully comply* with any purge conditions imposed upon him." *Spears v. Spears*, 245 N.C. App. 260, 278, 784 S.E.2d 485, 497 (2016) (emphasis added). Indeed, "a person in civil contempt holds the key to his own jail by virtue of his ability to comply [with the court order]."

*Jolly v. Wright*, 300 N.C. 83, 93, 265 S.E.2d 135, 143 (1980), *overruled on other grounds by McBride v. McBride*, 334 N.C. 124, 431 S.E.2d 14 (1993). This Court has previously vacated a contempt order where the findings of fact "[did] not support the conclusion of law that defendant has the *present ability* to purge himself of the contempt[.]" *McMiller v. McMiller*, 77 N.C. App. 808, 809, 336 S.E.2d 134, 135 (1985) (citation omitted) (emphasis added). "Ability to comply has been interpreted as not only the present means to comply, but also the ability to take reasonable measures to comply." *Watson*, 187 N.C. App. at 66, 652 S.E.2d at 318 (citing *Teachey*, 46 N.C. App. at 334, 264 S.E.2d at 787). "A general finding of present ability to comply is sufficient when there is evidence in the record regarding [the contemnor]'s assets." *Id.* (citing *Adkins v. Adkins*, 82 N.C. App. 289, 292, 346 S.E.2d 220, 222 (1986)).

Here, the evidence before the trial court showed Plaintiff lacked sufficient income to cover her expenses and court-ordered payments. Again, Plaintiff testified her net income was approximately $3,600.00 per month, while she owed $3,545.00 total in prospective and past-prospective child support and attorney fees. Additionally, Plaintiff testified her recurring monthly personal expenses totaled $1,705.00. Thus, Plaintiff could not pay both her expenses and court-ordered payments. Further, the only evidence as to Plaintiff's assets was her testimony that she lives in her grandmother's house and thus does not own a home.

It would be illogical to conclude, based on this evidence, Plaintiff had the present ability to pay even greater attorney fees and past-prospective child support

than already ordered or that Plaintiff could have taken reasonable measures to comply. Thus, the evidence is insufficient to support the trial court's Finding that Plaintiff had the ability to comply with the purge conditions. Therefore, the trial court erred in finding Plaintiff had the ability to comply with the purge conditions.

B.      *Escalation of Financial Obligations*

"The order of the court holding a person in civil contempt must specify how the person may purge himself of the contempt." N.C. Gen. Stat. § 5A-22(a) (2023). Again, our Courts have consistently affirmed the "statutory definition of civil contempt makes clear that civil contempt is not a form of punishment; rather, it is a civil remedy to be utilized *exclusively to enforce compliance* with court orders." *Atassi v. Atassi*, 122 N.C. App. 356, 360, 470 S.E.2d 59, 61 (1996) (quoting *Jolly*, 300 N.C. at 92, 265 S.E.2d at 142) (emphasis added). As a result, purge conditions must be used to coerce compliance with an underlying court order, not to modify such an order. *See Robinson v. Robinson*, 273 N.C. App. 407, 846 S.E.2d 595, 2020 WL 5154040, *3 (2020) (unpublished) (concluding civil contempt purge conditions modifying parties' prior equitable distribution consent order were improper).

Here, as a purge condition, the trial court ordered Plaintiff to pay $21,600.00 in attorney fees beyond what it had previously ordered. Although we have already concluded the trial court's award of increased attorney fees and past-prospective child support were impermissible as a modification of a prior order, they are likewise impermissible as purge conditions. Given that the purpose of a purge condition is to

compel compliance, it is illogical to conclude ordering Plaintiff to pay more money could coerce her to pay the amounts already ordered where she does not have the ability to pay the original amounts. Thus, under our caselaw, the trial court did not have the authority to modify the past-prospective child support or attorney fees through purge conditions or modification order.

Even if these escalations were viewed as fines rather than modifications of prior orders, they would still be inappropriate here. Although a fine may be an appropriate sanction for civil contempt, this is so only "when the [contemnor] can avoid paying the fine simply by performing the affirmative act required by the court's order." *Bishop v. Bishop*, 90 N.C. App. 499, 504, 369 S.E.2d 106, 109 (1988) (quoting *Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 632, 108 S. Ct. 1423, 1429, 99 L. Ed. 2d 721 (1988)). Here, the Record reflects Plaintiff *cannot* comply with the underlying order. Thus, she has no way to avoid such a sanction. Therefore, viewed in any light, the trial court's purge conditions here exceeded the scope of its authority. Consequently, the purge conditions are impermissible.

V.     Automatic Incarceration

"A trial court may not hold a person in civil contempt indefinitely." *Spears*, 245 N.C. App. at 282, 784 S.E.2d at 499 (citing *Wellons v. White*, 229 N.C. App. 164, 181-83, 748 S.E.2d 709, 722-23 (2013)). Moreover, it is well-established that a "defendant in a civil contempt action will be fined or incarcerated *only after* a determination is made that defendant is capable of complying with the order of the

court." *Jolly*, 300 N.C. at 92, 265 S.E.2d at 142 (emphasis added).

Here, the trial court ordered: "If Plaintiff fails to make any payment as scheduled, on the date so scheduled, Plaintiff shall be arrested and held in the Carteret County Jail until payment in full is made." This too is error.

Our caselaw makes clear an alleged contemnor may only be incarcerated *after* a trial court determines he is capable of complying with the underlying court order. *E.g.*, *Jolly*, 300 N.C. at 92, 265 S.E.2d at 142; *Hodges v. Hodges*, 64 N.C. App. 550, 552, 307 S.E.2d 575, 577 (1983) (citation omitted); *Hartsell*, 99 N.C. App. at 385, 393 S.E.2d at 574 (citations omitted); *Adkins*, 82 N.C. App. at 292, 346 S.E.2d at 222. And this makes absolute sense given how our courts define "willfulness": a present ability to comply and deliberate decision not to do so. *Sowers*, 150 N.C. App. at 118, 562 S.E.2d at 596 (citation omitted); *Watson*, 187 N.C. App. at 66, 652 S.E.2d at 318 (citing *Teachey*, 46 N.C. App. at 334, 264 S.E.2d at 787). Thus, for each alleged violation, a trial court must consider whether the contemnor indeed can comply with the order. Here, although Plaintiff testified to her income and some of her regular expenses, there is simply no way the trial court can project out and assume her income, expenses, or assets in the future; and our law requires a fact-specific inquiry for each alleged violation. Therefore, the trial court erred in ordering Plaintiff be

automatically incarcerated if she fails to make any scheduled payment.[3]

Thus, for all the reasons set forth herein, the trial court erred both in holding Plaintiff in civil contempt and by impermissibly modifying its prior orders. Consequently, the trial court's Contempt Order was entered erroneously.

## **Conclusion**

Accordingly, for the foregoing reasons, we reverse the Contempt Order.


REVERSED.

Judge FLOOD concurs.

Judge STADING concurs in result only.

---

[3] We note Defendant additionally argues Plaintiff failed to preserve most of these issues for appellate review because she did not object during the contempt hearing. This argument lacks merit. Our Rules of Appellate Procedure provide: "Any such issue that was properly preserved for review by action of counsel taken during the course of proceedings . . . *or taken without any such action*, including, but not limited to, *whether the judgment is supported by the verdict or by the findings of fact and conclusions of law* . . . may be made the basis of an issue presented on appeal." N.C.R. App. P. 10(a)(1) (2024) (emphasis added). Further, "an order is not final until 'it is reduced to writing, signed by the judge, and filed with the clerk of court[.]' " *In re L.G.A.*, 277 N.C. App. 46, 54, 857 S.E.2d 761, 767 (2021) (quoting N.C. Gen. Stat. § 1A-1, Rule 58). Thus, "[a] party would have no way of 'objecting' to a provision of the order until after the order is written, signed, and filed; that is the purpose of an appeal." *Id.* at 54, 857 S.E.2d at 768.